(No. 6840.   October 7, 1941)

EDGAR KIRK and CORA KIRK, Appellants, v. MARRY
A. SCHULTZ and SUSAN SCHULTZ, Respondents.

(119 Pac. (2d) 266)

Delana & Delana, for Appellants.

Willis C. Moffatt and Wm. F. Galloway, for Respondents.

BUDGE, C.J.—Appellants set up two causes of action in their complaint. First, to establish a public highway over respondents' land and to compel the removal of an obstruction,to-wit, a gate maintained thereon by respondents. Second, to establish an easement over respondents' land by prescription. Judgment for respondents, from which this appeal is prosecuted.

Appellants own considerable land on the South side of Boise River in the vicinity of Birch Creek. Respondents own land about a mile below appellants' land. A short distance below respondents' residence is Charcoal Creek. Approximately midway between appellants' land and respondents' land is a curve in the Boise River known as Gooseneck. The alleged right of way in question is between Charcoal Creek and Gooseneck.

In May, 1936, respondents padlocked the gate on the alleged right of way and refused to permit appellants to pass through the same. In order for appellants to reach Boise, their market, or their placer mines, they must cross the Boise River by way of an old abandoned railroad bridge at Gooseneck; or go a short distance up the river and reach the state highway by crossing a bridge near More's Creek; or go down the South side of the river across respondents' land and reach the road at Charcoal Creek. Appellants claim they have a right to use this latter means of ingress and egress from their lands for the following reasons as alleged in their complaint. First, that it is a public highway established as such under the Federal Statutes of 1866, or under the Territorial Laws of 1881 or 1887. Second, that appellants and their predecessors in interest acquired a prescriptive easement across respondents' land. Respondents deny each of the above allegations.

Appellants introduced evidence to the effect that this alleged trail or road had been used as far back as 1878.

Respondents introduced no evidence relative to its use prior to 1894. The Court found that it was only casually, and not regularly, used prior to 1890; that, therefore, no public highway was established prior to that date, or at any time. The Court denied relief on appellants' second cause of action because "no prescriptive easement could be acquired by plaintiffs against the Federal government nor against these defendants before patent by the Federal government."

Appellants rely upon eight assignments of error; however, only two questions are presented. First, was the use by the public of the trail or road prior to 1890 only casual and desultory, and therefore insufficient to establish a public highway. Second, could a prescriptive easement be acquired against the Federal government, or against respondents prior to issuance of patent by the Federal government.

The evidence clearly established that in 1882 there was a road from Boise up to the mouth of Charcoal Creek, and a trail, traversing respondents' land, extending to Birch Creek. The evidence is conflicting as to the width of the trail or road; but the witnesses generally agree that it was well-marked, used as a stock trail, and by miners, hunters, fishermen, and persons on horseback casually and desultorily to 1890 or 1891, when certain users of the trail or road proceeded to widen it into a wagon road over the land which respondents now occupy, and which was public domain at that time.

Did such use establish a public highway under the Federal Statutes of 1866, or the Territorial Laws of 1881 or 1887?

Federal Highway Grant Statute, Title 43, sec. 932, U. S. C. A., provides: "RIGHTS OF WAY FOR HIGHWAYS. The rights of way for the construction of highways over public lands, not reserved for public use, is hereby granted."

The general rule would seem to be that in order to constitute an acceptance of the congressional grant of right of way for public highways across public lands, there must be either user by the public for such a period of time, and under such conditions as to establish a

highway under the laws of this State; or there must be some positive act or acts on the part of the proper public authorities clearly manifesting an intention to accept such grant with respect to the particular highway in question. *Sutton v. Nicolaisen,* 112 Cal. xvii, 44 Pac. 805; *Stofferan v. Okanogan,* 76 Wash. 265, 136 Pac. 484; *State v. Nolan,* 58 Mont. 167, 191 Pac. 150; *Warren v. Chouteau County,* 82 Mont. 115, 265 Pac. 676; *Koloen v. Pilot Mount Twp.,* 33 N. Da. 529, 157 N. W. 672, L. R. A. (N. S.) 1917A 350.

There is no evidence in the record that would justify the conclusion that there was any positive act, or acts, on the part of the proper public authorities, clearly or at all manifesting an intention to accept, under the provisions of the Federal Statutes of 1866, the alleged trail or road as a public highway. It has never been designated by the proper public authorities as a public highway, recorded as such by order of the Board of County Commissioners, or maintained by public expenditure.

The question therefore arises, was there such regular use of the trail or road by the public for such a period of time and under such conditions as to establish a public highway under the laws of this State.

1881 Session Laws, sec. 1, page 277, provides:

"All public highways, roads, streets, and thoroughfares, which are or have been used as such at any time within two years prior to the passage of an act entitled, 'An Act concerning roads, trails, and public thoroughfares,' approved January 12th, 1875, or which may hereafter be declared such by the board of County Commissioners within their respective counties, shall be considered county roads. All roads or highways laid out or now traveled, or which have been *commonly* used by the public, including such as have been wrongfully closed at any time since January 12, 1873, in the several counties of this Territory, are hereby declared county roads; excepting, however, roads and highways upon which franchises have heretofore been granted, so long as the franchise of any such road shall remain in full force and effect." (Italics ours.)

Revised Statutes of 1887, sec. 851, page 150, provides:
"Roads laid out and recorded as highways, by order of the Board of Commissioners, and *all roads used as such for a period of five years, are highways,* \* \* \* \*." (Italics ours.)

The trial court in disposing of the question as to whether the above statutes had been complied with, held that the use by the public of the trail was insufficient, being only casually and desultorily and not regularly used; therefore, no public road was shown to have been established under any of the three statutes previously mentioned.

■ Evidence upon these points is conflicting. To quote the evidence would unnecessarily extend this opinion.

"But where the testimony in such a case is conflicting, and from it reasonable men might draw different conclusions, since there is evidence to support both theories of the case, the judgment of the trial court will not be disturbed." *Jones v. Vanausdeln,* 28 Idaho 743, 750, 156 Pac. 615; to same effect see *Bussell v. Barry,* 61 Idaho 350, 354, 102 P. 2d 280, and cases cited therein.

■ We have therefore concluded, after a most careful examination of the record, that there is sufficient substantial evidence to support the court's findings and judgment as to appellant's first cause of action.

Coming now to appellants' second cause of action which is based upon the theory that appellants and their predecessors acquired a prescriptive easement across respondents' land.

The trial court held that no prescriptive easement could be acquired by appellants against respondents or the Federal government before patent issued by the Federal government.

Respondents contend that during the period the land was public domain, appellants could establish no easement prior to the patent; that when said land was withdrawn by the government for a Federal Power Reserve on July 1, 1910, no adverse possession or use of the road could be established either as against the government or as against respondents, prior to patent or prior to exclusion

by the government of said land from the Federal Power Reserve, which exclusion was not made until 1938, and then only as to respondents' placer claims.

The record discloses that appellants and their predecessors used the trail, and the trail as widened, as follows: Presley from 1884 to 1889; Gaikowske, 1889 to 1890; Casebeers, 1890 to 1897; Kunzis, 1898 to 1912; appellants, 1912 to May, 1936, when respondents prevented appellants' use thereof.

It therefore appears that appellants' predecessors used the trail for a period of approximately 26 years during which time the land was public domain, and for two years subsequent to its withdrawal in 1910 by the government for a Federal Power Reserve. Appellants used the trail for approximately 24 years. In other words, the right of way was used by appellants and their predecessors for 52 years.

Appellants established their residence in 1912 and used the right of way openly, notoriously and continuously to May, 1936, for the driving of stock, hauling of mining equipment to certain placer mining locations below respondents' premises, hauling hay, traveling to and from Boise City.

Respondents went into possession of the land now occupied by them in 1933. Their predecessors having occupied the land in 1930 or 1931. It therefore appears that appellants were in the enjoyment of the easement from 1912 to 1933, or a period of 21 years, before respondents came into possession of the land. During all of the time, as above indicated, appellants were in the enjoyment and use of the right of way without interference up until May, 1936, when respondents prevented further use of the right of way by appellants.

It may be conceded, but not decided, that appellants acquired no easement or right of way as against the United States, either while the land was public domain, or during the period covered by the withdrawal for power purposes. Appellants are not seeking to establish an easement or right of way by prescription as against the United States, but as against respondents. If the United States were a party to this action, and appellants

were here seeking to establish an easement or right of way as against the United States, we would have a different question.

"Adverse possession cannot be initiated * * * * before the issuance of patent when such possession is asserted in defense of a claim of title adverse to that of the Government." *Hemphill v. Moy,* 31 Idaho 66, 169 Pac. 288.

The following question therefore arises, namely, can appellants acquire an easement or right of way against respondents.

The principle which is applicable to the case at bar must not be confounded or confused with the doctrine of adverse possession as against the United States. One claiming an easement or a private road by adverse possession for the statutory period as against all persons except the United States may assert such adverse possession as against any person in occupancy, while conceding the superior title of the United States. In other words the rule would seem to be that possession held in subordination to the title of the United States may be adverse to any other claimant.

It was held in *Wilson v. Williams,* 43 N. M. 173, 87 P. 2d 683, that adverse user of a road over public lands of the United States for a period of 10 years prior to the time defendant acquired title to the land through homestead created a prescriptive right of user of the road which could be enforced against the defendant. To the same effect, see the following cases. (*Northern Pac. Ry. Co. v. Pyle,* 19 Idaho 3, 112 Pac. 678; *Boe v. Arnold,* 54 Oregon 52, 102 Pac. 290; *Switzler v. Earnheart,* 59 Oregon 344, 117 Pac. 296, 297; *Sharpe v. Catron,* 67 Oregon 368, 136 Pac. 20; *Spath v. Sales et al.,* 70 Oregon 269, 141 Pac. 160; *Christmas v. Cowden,* (N. M.), 105 P. 2d 484, 494.)

Appellants might well admit that when the trail or road in question was established, the title to the land was in the United States and that it subsequently was withdrawn by the United States for power purposes, and still urge adverse possession and the creation of an easement as against respondent. The position so taken by appellants would not be inconsistent or unavailable.

In determining whether appellants had an easement and right of way it appears from the record that appellants and their predecessors used the right of way regularly and for their needs for the period required under the laws of this State to establish an easement and right of way by prescription.

█ Cases might and do arise where those using a private way over public domain may by their conduct, openly and notoriously pursued, apprise one subsequently acquiring title from the United States that they are claiming the way as of right, and thus make their possession adverse as against the entryman who would take title burdened with the easement.

█ We have therefore concluded that possession and right to the use of an easement can be acquired as against an occupant or claimant while the land is still public domain and before patent; or during a period of withdrawal by the United States for power purposes, or other public use.

█ One acquiring an easement and right to travel over the lands of another not only assumes the burden of maintenance of said right of way, but all other burdens incident to the use. *City of Bellevue v. Daly,* 14 Idaho 545, 94 Pac. 1036.

█ It therefore follows that the trial court's judgment must be reversed as to appellants' second cause of action, and judgment entered thereon in appellants' favor as prayed for in appellants' complaint. The judgment as to appellants' first cause of action is affirmed.

Costs to appellants.

Givens, Morgan, Holden, and Ailshie, JJ., concur.

(On petition for rehearing)
Filed December 4, 1941

Budge, C.J.—Petition for rehearing was filed in this case, also briefs of respective counsel. The first point urged by respondents is that by reason of certain language used in the original opinion respondents are re-

quired to remove the gate across the easment right of way. In paragraph 7 of appellants' complaint it is alleged "That on or about May 9, 1936, the defendants wrongfully, unlawfully and without right, closed up said easement and right of way by locking and padlocking a gate across said easement and right of way, and that the defendants have at all times since maintained said padlocked gate on said easement and right of way, and refused to allow the plaintiffs to use the same for any purpose."

The relief sought under the above allegation is not the removal of the gate or its maintenance across the easement or right of way but removal of the padlock which permanently closed the easement and right of way, thereby denying appellants ingress and egress across respondents' land. The right of respondents to maintain the gate across the easement or right of way is conceded.

As a general rule the owner of land subject to an easement of a nature which requires the maintenance of a means for its enjoyment is not bound to keep such means in repair or to sustain any expense in maintaining it. (*City of Bellevue v. Daly,* 14 Ida. 545, 94 Pac. 1036; *Coulsen v. Aberdeen-Springfield C. Co.,* 47 Ida. 619, 277 Pac. 542; *Pioneer Irr. Dist. v. Smith,* 48 Ida. 734, 285 Pac. 474; *West Coast Power Co. v. Buttram,* 54 Ida. 318, 31 Pac. 2d 687; 17 Am. Jur. p. 1003, par. 108, note 16; 28 C. J. S. p. 773, par. 94, note 34.) The duty rests upon appellants to open and close the gate when using the easement or right of way.

It is contended that the location of the easement or right of way is not definitely located and described. Appellants in paragraph 3 of their complaint allege "The plaintiffs and their predecessors in interest and title continuously used an easement and right of way for the passage and travel of persons on foot, on horseback and with pack outfits, and for horses, cattle, sheep and vehicles running through said Sections 28, 29, 32 and 5, as a means of ingress to and egress from said plaintiff's lands by plaintiffs and their predecessors in interest and the public, said easement and right of way running in a Northeasterly and Southwesterly direction through said Sections on

the Southeasterly side of said Boise River and close thereto, and just above the high water mark, said easement and right of way being about 50 feet in width and the same at all times herein mentioned, being located in approximately the same place as the same is now located, along the Southeasterly side of said Boise River, said easement and right of way running down the Southeasterly side of said Boise River and connecting with the public highway running to Boise City, Idaho."

Respondents' main contention is, if we understand it, that the evidence indicates that the only property ever used for right of way or easement purposes through their land was from two to four feet wide and the widest that any evidence indicates was the width of a wagon or approximately five or six feet; and that the opinion should be modified directing the trial court to enter judgment in accordance with the above alleged evidence and not in accordance with the prayer in appellants' complaint, to-wit, about fifty feet in width.

The evidence is conflicting as to the width of the easement or right of way; but there is an abundance of evidence to warrant the conclusion that the easement or right of way, by reason of its use in the manner set out in the original opinion, became more or less a well-worn and well-defined line of travel; that in 1891 a wagon road, traversing respondents' land and a part of appellants' land, was constructed from Charcoal Creek to Birch Creek.

There is ample evidence to support the conclusion that the easement or right of way is located substantially in the same place as of the date of its original use. Since the evidence as to the width of the easement is in conflict we would not be justified in concluding that its width did not exceed from two to four feet or the width of a wagon, approximately five or six feet, as contended by respondents, and directing the trial court to enter its decree to that effect.

It has been generally held that, if not otherwise fixed, the actual location of an easement or right of way is determined by its practical location and use over the period required to establish such easement or right

of way. The easement or right of way in question has been used by appellants and their predecessors for approximately 26 years. The use cannot be extended but is limited to a reasonable and necessary enjoyment by appellants for the purposes and in the manner and to no greater extent than said easement or right of way has heretofore been used; that is, to no greater extent than is reasonably necessary for its use.

Primarily this action was brought for the purpose of having determined whether or not appellants had an easement or right of way over respondents' land.

The trial court's judgment as to appellants' second cause of action must be reversed and judgment entered in appellants' favor to the effect that appellants have an easement or right of way through and across respondents' land burdened with the duty to maintain the same in a state of good repair and efficiently so that no unnecessary damage will result from its use to the servient estate, and limited to the reasonable and necessary enjoyment of said easement or right of way as above indicated. The cause is remanded with instructions to the trial court to make and enter its decree as herein indicated with the right to take further testimony upon the question of the necessary width, course, and direction of the easement or right of way if deemed necessary.

Givens, Morgan, Holden, and Ailshie, JJ., concur.