753 P.2d 261

**Vance BURRUP, Larry R. Christensen, A. Lin Whitworth, M.J. Kent and David Whitworth, Plaintiffs–Respondents,**

v.

**Elmer H. STANGER and Fran Stanger, husband and wife, Defendants–Appellants.**

No. 16594.

Court of Appeals of Idaho.

March 24, 1988.

Review Granted May 24, 1988.

Louis F. Racine, Jr., of Racine, Olson, Nye, Cooper & Budge, Pocatello, for defendants-appellants.

R.M. Whittier of Whittier & Souza, Pocatello, for plaintiffs-respondents.

## SUBSTITUTE OPINION

The Court's prior opinion, dated October 15, 1987, is hereby withdrawn.

SWANSTROM, Judge.

Elmer and Fran Stanger appeal the district court's judgment decreeing that a portion of Indian Creek Road located upon their land in Bannock County is a public highway. Although other issues are raised on appeal, the decisive issue is whether the district court erred in determining that the road across the Stanger property is a public highway under I.C. § 40–202. We reverse.

In 1910 a roadway along Indian Creek, built in part at least by early settlers, was declared to be a public highway by the Bannock County Commissioners. The road, coursing westward up the creek from the Portneuf River, approached but did not enter what is now the Stanger property. Before it reached the Stanger property the original roadway turned southward in what is now Vance Burrup's property, to join the Walker Creek Road. At some early time, not shown by the record, the original road evolved in a westward direction. No evidence reveals who extended the road or why or how it was done. No evidence shows that the extension was accomplished by expenditure of any public money or work. The record only shows that over the years local residents, including the plaintiffs, used Indian Creek Road for access to forest lands by traversing what now is the Stanger property. As a result, a noticeable passage was created across the property and some two miles beyond the present Forest Service boundary. It is admitted by all parties that Indian Creek Road today is a county highway up to the Stangers' east boundary.

In 1954 Elmer Stanger's father purchased and later deeded over to Elmer the one-half mile wide parcel of ground underlying the evolved road. This land abuts Forest Service land on the west and Burrup's land on the east. The Stangers use the land for grazing cattle; their personal residence is approximately five miles away. In an attempt to restrict traffic, the Stangers placed barbed wire gates across the road at both boundaries and posted "No Trespassing" or "Private Property" signs at the gates. The Stangers regularly found the gates opened or destroyed, and the signs removed.

From 1973 to 1984, the Stangers maintained a mobile home on the land for their son and his family. The home was located 900 feet west of the Stangers' east boundary, and was positioned directly across the road. A short distance from the home, the Stangers constructed a bypass road for access to their own land; it could also be used for access to the Forest Service land. A metal gate was erected across this road in 1980 which effectively barred all vehicular traffic. At one time, the Stangers obstructed the road by the placement of an earthen berm.

Most of the plaintiffs in this action are persons who have lived along Indian Creek for several years. Vance Burrup operates a ranch adjoining the Stanger property. He and other plaintiffs complained to the Bannock County Sheriff about the Stangers' actions. Nothing happened as a result of that complaint. The plaintiffs then petitioned the Bannock County Commissioners to declare the road across the Stangers' property to be a public highway. The commissioners refused. This litigation followed. In their complaint, the plaintiffs

alleged that they have acquired private easements by prescriptive use; that a public roadway exists under I.C. § 40–202 through public use and maintenance; and that the Stangers should be permanently enjoined from interfering with the public's use of the road. The Stangers counterclaimed, alleging trespass and requesting injunctive relief. The Stangers moved for summary judgment.

Partial summary judgment was granted in favor of the Stangers on the issue of whether, under I.C. § 40–202, the road was public. However, the district judge set aside this ruling upon plaintiffs' motion for reconsideration. Thus, the issue was reserved for trial. Following a nonjury trial, the court found in favor of the Stangers on the issue of private prescriptive easements. The plaintiffs have raised no challenge to that decision. The trial court, however, rendered judgment to the plaintiffs on the issue of whether a public road exists under I.C. § 40–202. The court enjoined the Stangers from obstructing the road. Further, the court declared the road to be fifty feet wide pursuant to I.C. § 40–2312, and ordered Bannock County, a nonparty, to maintain it. The plaintiffs were awarded attorney fees under I.R.C.P. 54(e)(1) and I.C. § 12–121.

On appeal, the Stangers assert four issues. As noted, the pivotal issue is whether the district court erred in its determination that a public highway exists. We hold the district court erred in determining that the facts demonstrated sufficient public maintenance for a public highway under I.C. § 40–202. The Stangers question the award of attorney fees to the plaintiffs. Our decision reversing the district court's decree of a public road renders this issue moot. The Stangers also contend the district court erred in failing to grant them injunctive relief against the plaintiffs. We think adequate legal remedies exist to preserve the Stangers' rights in the event of future trespass. No injunctive relief is presently required.

Whether a public highway exists across the Stangers' property turns on the provisions of former I.C. § 40–202.[1] Three situations giving rise to public highways are recognized by this statute.

Roads laid out and recorded as highways, by order of a board of commissioners, and all roads used as highways for a period of five (5) years, provided they shall have been worked and kept up at the expense of the public, or located and recorded by order of a board of commissioners, are highways.

The first and third clauses of that statute are inapplicable here. The portion of road traversing the Stanger property was not "laid out and recorded" by order of a board of commissioners. Nor has it been used for five years and "located and recorded" by like order. The dispositive issue is whether the road has been used as a highway for a period of five years while being maintained at the expense of the public.

We are faced with reviewing entwined questions of law and fact. As to narrative facts found by the trial court, we will defer to those that are supported by substantial, competent evidence. I.R.C.P. 52(a). However, we freely review whether the facts found are sufficient to satisfy the legal requirements for a public highway through public use and maintenance under I.C. § 40–202. *See Standards of Appellate Review in State and Federal Courts*, § 3.2.2 IDAHO APPELLATE HANDBOOK (Idaho Law Foundation, Inc. 1985). Legally sufficient facts are those which establish, by a prima facie showing, each requirement of the statute.

Idaho case law, spanning over ninety years, has construed the statutory requirements for determining whether a public highway exists. Thus, some general analytical framework has been provided. In *Tomchak v. Walker*, 108 Idaho 446, 700 P.2d 68 (1985), our Supreme Court collated and expressed the major principles. Draw-

---

1. This statute was amended in 1986 and redesignated as I.C. § 40–202(3). The amendment deleted some words but left the substance of the statute unchanged. *Compare* I.C. § 40–109(5).

Prior to 1985 the identical language quoted above was found in former I.C. § 40–103 and other similar statutes dating back to 1893.

ing upon that case and others we find the following standards have emerged. 

Idaho Code § 40-202 may be used by counties or by private parties to obtain a declaration that a road is a public highway. It may be used either to foreclose private parties from obstructing the road, *e.g., State v. Nesbitt,* 79 Idaho 1, 310 P.2d 787 (1957), or to confirm the county's duty to maintain the road, *e.g., Pugmire v. Johnson,* 102 Idaho 882, 643 P.2d 832 (1982). The primary factual questions are the frequency, nature and quality of the public's use and maintenance. *Tomchak v. Walker, supra.*

A sufficient showing of public use under the statute must demonstrate the following. The public's use of the road must have been more than only casual and desultory. *Kirk v. Schultz,* 63 Idaho 278, 119 P.2d 266 (1941). One or more public agencies must have regularly maintained the road and the public must have used the road for a period of five years. *Pugmire v. Johnson, supra; State v. Nesbitt, supra.* It must be shown that the public agency's maintenance of the road was performed at necessary times and places. It is not required that the road be worked on for five consecutive years, nor does the statute require work to be done throughout the road's entire length. *State v. Nesbitt, supra.* Thus, the facts should show that the public has used the road regularly, as it would any similar public highway, and that public funds were used to maintain the road for a five-year period; the maintenance being more than occasional or sporadic, but as was necessary.

The remaining factual questions relate to the intentions of the landowners and of the county relevant to use and maintenance. *Tomchak v. Walker, supra.* Objective manifestations of intent include designating the road as a public highway by the proper public authorities; recording the road as a public highway by order of the board of county commissioners; and the regular maintenance of the road by public expenditure. *Kirk v. Schultz, supra.* The facts must demonstrate that minor maintenance work or snow removal, done by the public road crews, was not a mere gratuitous aid to the local landowners or citizens. *Rice v. Miniver,* 112 Idaho 1069, 739 P.2d 368 (1987); *Cox v. Cox,* 84 Idaho 513, 373 P.2d 929 (1962). Likewise, it must be shown that the public agency has not expressly agreed to maintain the roadway while continuing to recognize it as private, in exchange for certain, limited public use, thereby not intending to create or assert rights greater than those allowed in the agreement. *Cordwell v. Smith,* 105 Idaho 71, 665 P.2d 1081 (Ct.App.1983). Correspondingly, it must be demonstrated that the public's use of the road was not merely the result of permission given by the owner, as opposed to acquiescence of the owner. When the facts of use, maintenance and intention satisfy the above principles, the law under I.C. § 40-202 operates to make the road public.

As to the use of the road in this case, the trial court made only these general findings. The road, from its origin at the "Portneuf [River] Road to the easterly boundary of the Forest Service land has been used by the public and worked at public expense in excess of five (5) years." The road has been used by "plaintiffs and others for a considerable time for the purpose of gaining access to the Forest Service land lying west of [the Stangers'] property." Access to the Forest Service land has been for recreation and other purposes, including access to mining claims within the Forest Service boundaries.

These findings reveal little about the nature, frequency and quality of the public's use of the road traversing the Stanger property. The evidence may be summarized as follows. Three plaintiffs and a local resident testified concerning their use of the road. Their testimony established casual use of the road in the late 1940's through the 1950's. The frequency of use then accelerated. Testimony showed at least annual, if not more frequent, uses of that portion of the road through the Stanger property. Some of this use was permissive. Some was not. The Stangers attempted to control use of the road through their property, but because they did not

live on the property for several years, their control was not effective. Vehicular use continued until 1980 when the metal gate was erected and locked.

The nature of use varied. Vehicular traffic was sporadic and ended when the metal gate was put in use. Horseback and foot travel appears to have been continuous even up to the time of trial. Evidence indicates that some of this use was permissive. The plaintiffs have used the road to travel into the forest land for purposes of hunting, wood-cutting, recreation and family outings. Some of the plaintiffs testified that they never saw the barbed wire gates or the "No Trespassing" signs. Other plaintiffs testified that they saw both the gates and the signs, but ignored them based on their personal belief that the road was public. Again, we note that other nonparty users had requested the Stangers' permission to use the road. Finally, there was testimony indicating activity on mineral claims in the Forest Service land up to 1978. Access to these claims was by use of the road across the Stanger property. However, Elmer Stanger testified that he permitted those people working the claims to cross his land.

The frequency, nature and quality of the public's maintenance of the road is indicated in the following facts. No evidence was introduced to show that any public maintenance of the road across the Stangers' property occurred prior to 1949. Accordingly, we will have to assume that no public roadway existed across the Stanger property prior to 1949. Between 1949 and 1951 the Bannock County Road Department performed work on the road at public expense. This consisted of blading the road on two occasions. In 1972 Bannock County installed a cattle guard at the east boundary of the Stanger property. Other work was performed on the road, including development of an area next to the Stangers' mobile home where equipment could be turned around. From 1973 until 1983 or 1984, while the mobile home was occupied, Bannock County snow plowed the road up to the mobile home. Other than declaring Indian Creek Road—as it originally existed in 1910—to be a public highway, the Bannock County Commissioners have not taken any other action relating to the road.

The plaintiffs produced evidence of the Forest Service's use and maintenance of the road across the Stanger property. The Forest Service performed maintenance on the road for several years and installed a cattle guard at the west boundary of the Stanger property. However, according to our Supreme Court in *French v. Sorensen*, 113 Idaho 950, 751 P.2d 98 (1988)—decided after our original opinion had issued in this case—the maintenance performed by the Forest Service may not be relied upon to satisfy the public maintenance requirement.

Moreover, the Forest Service used and maintained the road based upon a right-of-way of uncertain status. There is no deeded right-of-way. The testimony of Forest Service employees and Elmer Stanger indicates that the right-of-way is by agreement or permission. Furthermore, a Forest Service employee testified that the Forest Service's blading of the road across the Stanger property was kept at a minimum so as "not to disturb private property." Certainly, the Forest Service has not asserted any rights in the road greater than those allowed by the Stangers.

The facts relating to the intentions of the land owners and the county relevant to the use and maintenance of the road show the following. Since 1954 barbed wire gates have been maintained at the Stanger property boundaries for the purpose of controlling cattle and stopping traffic. Even after cattle guards were installed, the Stangers tried to maintain barbed wire gates across these openings. In 1973 the Stangers placed their mobile home directly across the road on their land. Later, the Stangers built a bypass road around the trailer and installed a metal gate across this road. It is clear that the Stangers did not acquiesce in the public's use of the roadway.

The only objective manifestation of the county's intention relevant to the road is the county's road work. The work performed by the Bannock County road crews in improving the road 900 feet into the

Stanger property, including the turn-around, was merely to assist the Stangers in moving their mobile home onto the property. The snow plowing was done as a gratuitous aid "while the mobile home was occupied."

The district court deemed it unnecessary to consider color coded maps of county roads, admitted into evidence, in disposing of the case. However, these maps and other exhibits may be considered as further objective manifestations of the county's intent with regard to the road and they help in casting the proper light upon the road work performed. *Cf.* I.C. § 40-202(3) (no duty to maintain a highway not designated on an official map of the highway system).

On official state and county maps Indian Creek Road is shown to extend across the Stanger property and into the Forest Service land. However, since 1967 the portion of the road across the Stanger property has been coded as "deleted or abandoned." If similar coded maps existed for earlier years, they were not produced at trial. From 1973 to 1982, 3.03 miles of Indian Creek Road was declared as part of Bannock County's road inventory. These inventories are used in part to obtain state reimbursement for county roadwork. The above figure reflects the distance from Portneuf Road to the Stangers' mobile home. The distance to the Stangers' east boundary gate is 2.86 miles. An Assistant County Engineer explained that the claimed 3.03 miles is erroneous because the county road ends at the Stangers' east boundary; however, he could not explain why the error persisted. The record contains a 1981 letter opinion from the County Attorney to the County Commissioners. The attorney opined that the county had no authority over the road across the Stanger property. It is quite clear that the county is not asserting any rights to the road beyond the Stanger boundary.

A final issue raised by the plaintiffs is whether the road across the Stanger property was ever abandoned by the county. They contend, of course, that the many years of public use resulted in the creation of a public highway. The plaintiffs point out that the road is used to access public forest lands. They state: "Once created, the public highway status continues until legally abandoned by the proper highway authorities."

■ The statute governing abandonment and vacation of county roads, I.C. § 40-203, provides that roads furnishing public access to state or federal public lands or waters cannot be abandoned without first petitioning the commissioners of the county or highway district where the road is located. The commissioners having jurisdiction must then take affirmative action before abandonment is complete. *French v. Sorensen, supra; Blaine County v. Bryson,* 109 Idaho 123, 705 P.2d 1078 (Ct.App.1985).

Sometimes it helps to state the obvious —a public highway must exist before it can be abandoned. As we have explained, the facts here are insufficient to show the existence of a public highway. Therefore, the issue of abandonment is not apposite.

We determine that the maintenance of the road was not sufficient under I.C. § 40-202 to support the conclusion that the road has become a public highway. Therefore, we hold that the district court erred in concluding that the road traversing the Stanger property is a public highway.

Judgment reversed. Costs to appellants. No attorney fees on appeal.

WALTERS, Chief Judge, specially concurring.

When we released our initial opinion in this case, I dissented without stating any reasons for my disagreement with the opinion. Having now determined that I will concur in the opinion as written by Judge Swanstrom, I feel it is appropriate to explain my change of position, for the benefit of the parties.

The district judge held that the road in question was a public highway. His conclusion was in part based upon evidence of maintenance of a portion of the road, and improvements made upon the road, by the United States Forest Service. His conclusion was supported by *State v. Nesbitt,* 79

Idaho 1, 310 P.2d 787 (1957). Although I was uneasy with the Supreme Court's majority ruling in *Nesbitt*, I accepted it at face value as controlling authority. This led me to believe the judgment of the district court below should be affirmed on both the facts and the law.

While the petition for rehearing in the instant case was pending, our Supreme Court issued its opinion in *French v. Sorensen*, 113 Idaho 950, 751 P.2d 98 (1988). *French* overruled the conclusion in *Nesbitt* that road maintenance activity by the Forest Service should be considered as a material factor in determining whether a prescriptive easement may arise in favor of the public, in an otherwise private roadway. In light of *French*, I now conclude the court below erred in taking into account the Forest Service activities when deciding that a public easement had been created. Thus, I concur in the decision to reverse the judgment of the district court in the present case.

BURNETT, Judge, specially concurring.

Having joined in the Court's original opinion, I now also join in today's opinion and in the order denying the petition for rehearing. In response to that petition, I have reexamined the record. I fail to discern substantial evidence upon which the trial court could have found that the county performed more than occasional or sporadic maintenance work on the road between the Stangers' second gate and the United States Forest Service property.

There is, of course, substantial (albeit controverted) evidence of such work by the county up to the second gate; and it is undisputed that the Forest Service worked on the road beyond the second gate. However, as noted in our original opinion, the Forest Service's work was performed within the scope of permission granted by the Stangers. Moreover, as noted in today's opinion, the Supreme Court has held that public work cognizable under I.C. § 40-202 must be performed by the State of Idaho or one of its political subdivisions, not by a federal agency. *French v. Sorensen*, 113 Idaho 950, 751 P.2d 98 (1988).

Cases of this nature often generate intense local feeling because they pit the rights of a private landowner against the interest of the general public in gaining convenient access to public lands. But the public is never a helpless hostage of the private landowner. The public may condemn a road across the private land and compensate the owner for his loss. Here, the Court simply holds that the statutory requirements for recognition of an existing public road have not been satisfied.