119 P.3d 630

HOMESTEAD FARMS, INC., an Idaho corporation, Petitioner–Appellant,

v.

BOARD OF COMMISSIONERS OF TETON COUNTY, State of Idaho, Respondent.

Verla Ard Hall and the Hall Family Trust, Plaintiffs,

v.

Board of Commissioners of Teton County, State of Idaho, Defendant.

Homestead Farms, Inc., an Idaho corporation, Petitioner,

v.

Board of Commissioners of Teton County, State of Idaho, Respondent.

Verla Ard Hall and the Hall Family Trust, Plaintiffs–Appellants,

v.

Board of Commissioners of Teton County, State of Idaho, Defendant–Respondent.

Nos. 30587, 30642.

Supreme Court of Idaho, Boise, May 2005 Term.

Aug. 22, 2005.

Grover & Butikofer, P.A., Rigby, for appellants Verla Ard Hall and the Hall Family Trust. Blair J. Grover argued.

Wilbur T. Nelson, Boise, for appellant Homestead Farms, Inc.

Laura E. Lowery, Driggs, for respondent.

TROUT, Justice.

This is an appeal from a memorandum decision of the district court dismissing in part and remanding in part judicial review proceedings brought by the Petitioner, Homestead Farms, Inc. (Homestead) and

Plaintiffs below, Verla Ard Hall and the Hall Family Trust (Hall) from a resolution of the Teton County Board of Commissioners (Commissioners) adopting a county highway map. Homestead and Hall own farmlands in western Teton County on which public highways were designated on the Teton County highway system map. Homestead and Hall sought judicial review of the Commissioners' inclusion of three of these roads on the county map. Because there is no record demonstrating the Commissioners followed proper statutory procedures in updating and amending their county highway system map to include properly created public highways, we remand.

## I.

### FACTUAL AND PROCEDURAL BACKGROUND

This case arises from the Commissioners' attempts to comply with the requirements of I.C. § 40–202, that each county commission prepare a county road system map. The statute requires each county in the state of Idaho to make an "initial selection of the county highway system," by causing a map to be prepared showing the general location of each public highway and right-of-way within their jurisdiction and, after a hearing, adopt the map as the official map of their highway system. Although the record does not reflect it, apparently in 1991 and 1996 the Commissioners adopted some kind of "official map" for Teton County. There is no record, however, of precisely what the Commissioners did or what map they adopted or how they went about creating their official highway map. I.C. § 40–202 also requires each county in Idaho to revisit its official highway map every five years, review any changes, and then adopt a current official county map.

In 2001, the Commissioners selected a "Big Sky Map," a commercially-produced map of Teton County, and by colored pen, designated various types of roadways throughout the County which they claimed to be public roadways within the meaning of I.C. § 40–202. They then gave public notice of their intent to adopt this map, and conducted hearings in July 2001 for the purpose of adopting it as the official county highway system map. The Commissioners gave the public until October 9, 2001, to petition for changes, at which point a new map would be drawn and another hearing scheduled for official adoption.[1]

Homestead and Hall responded to the notice, objecting to the map's inclusion of three unimproved dirt roads crossing their properties as "public" roads. Homestead (which argued for the exclusion of Road #1, and a portion of Road #2), and Hall (which argued for the exclusion of a second portion of Road #2, and Road #3), argued there was no evidence supporting a finding that the roads crossing their properties were public roads, highways, or public rights-of-way within any statutory definition. In response, the Commissioners advised Homestead and Hall they would need to request vacation of the roads pursuant to I.C. § 40–203 to have the roads removed from the map. The final hearing was held on April 8, 2002, and the Commissioners adopted the Big Sky Map, reflecting several amendments, but still including the three disputed roads. The record does not reflect any findings as to why the Commissioners decided to continue to include the disputed roads on the official map. The Board's engineers prepared the final map from the Big Sky Map that was adopted.

Homestead and Hall declined to seek vacation of these roads, believing these roads were not public in the first place and, therefore, there was no basis or need to vacate what, in effect, was private property. Instead, both parties separately filed petitions for judicial review of the Commissioners' actions, alleging that the Commissioners' initial inclusion of the roads was improper. After the petitions for judicial review were filed, the Commissioners advertised their intention to vacate two of the subject roads and, following hearings, abandoned any claim previously asserted in all of Road #1 and a

1. The record is not clear whether the 2001 proceedings represented a renewal of the same 1996 map or whether the Commissioners were using an entirely new commercial map as a basis for designating the highway system in the 2001 proceedings.

portion of Road # 2, and deleted them from the county road system map.

On judicial review, Homestead and Hall argued that § 40–202 only provides a means for identifying roads within a county and the Commissioners' inclusion of the roads on the map had unlawfully converted the proceeding into an adjudication, legally altering the status of any road included on the map. The district court consolidated the two cases for consideration on review. Oral arguments in the judicial review proceeding were conducted and the district court issued a Memorandum Decision on December 3, 2003. The court ruled that the Commissioners' actions were not tantamount to adjudicating the public status of any roads, but instead were intended to achieve a means of identifying roads within the county that the Commissioners believed to be public roads, presumably based on public hearings prior to their inclusion.

The court also found that the record below was devoid of any factual determinations made by the Commissioners in support of their decision to include the subject roads as part of the county system map. However, the court decided that since the Commissioners had abandoned any claim of public interest in Road # 1, and part of Road # 2, Homestead's claims for relief had been rendered moot. The court found that as to Hall's interest in the remaining portion of Road # 2, and Road # 3, there was an inadequate record of the considerations underlying the Commissioners' decision to include those roadways in the county highway map and, therefore, the trial court remanded Hall's petition for further proceedings in accord with the principles set forth in *Burrup v. Stanger*, 114 Idaho 50, 53, 753 P.2d 261 (Ct. App.1988). Finally, the court denied Homestead and Hall's request for attorney fees pursuant to I.C. § 12–117 and 12–121. This appeal followed.

## II.

### STANDARD OF REVIEW

■ A final decision or order of the district court on judicial review of an agency decision is appealable as a matter of right.

I.A.R. 11(f). In a subsequent appeal from a district court's decision in which the district court was acting in its appellate capacity under the Administrative Procedure Act (APA), the Supreme Court reviews the agency record independently of the district court's decision. *Floyd v. Bd. of Comm'rs of Bonneville County*, 137 Idaho 718, 52 P.3d 863 (2002). Decisions made by a board of county or highway district commissioners in an abandonment, vacation or validation proceeding are subject to judicial review pursuant to I.C. § 40–208. In such a case, the review is conducted by the court without a jury and is confined to the record. I.C. § 40–208(6). The court also may not substitute its judgment for that of the Commissioners as to the weight of the information on questions of fact.

In the case at bar, Homestead and Hall have not challenged a decision regarding an abandonment, vacation or validation proceeding. Instead, they are challenging the Commissioners decision to place disputed roads on an official county highway map in a § 40–202 proceeding, which action presumptively has the effect of notifying the public that such roads occupy the status of public highways and/or rights-of-way. Although there is no applicable standard of review previously articulated by the Court for such a situation, since I.C. § 40–202 is contained in the section of the Code relating to general provisions for the establishment and maintenance of the state and county highway system, including procedures required for abandonment, vacation or validation of highways, it is logical that the statutorily mandated standard of review under § 40–208 should apply to § 40–202 decisions. Therefore, the following standard will be applied in evaluating this appeal.

■ The Court may affirm the decision of the commissioners or remand the case for further proceedings. The Court may also reverse or modify the decision if substantial rights of the appellant have been prejudiced because the commissioners' findings, inferences, conclusions or decisions are:

(a) In violation of constitutional or statutory provisions;

(b) In excess of the statutory authority of the commissioners;

(c) Made upon unlawful procedure;

(d) Affected by other error of law;

(e) Clearly erroneous in view of the reliable, probative and substantial information on the whole record; or

(f) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

I.C. § 40–208(7). Erroneous conclusions of law made by an agency may be corrected on appeal. *Love v. Board of County Comm'rs of Bingham County,* 105 Idaho 558, 559, 671 P.2d 471, 472 (1983). The right to recover attorney fees under I.C. § 12–117 presents an issue of law that we review de novo. *Farrell v. Bd. of Commr's of Lemhi County,* 138 Idaho 378, 64 P.3d 304 (2002).

## III.

### ANALYSIS

Homestead and Hall's main point of contention in this case is that the Commissioners unlawfully undertook to declare the status of various roads within Teton County as public roads, in the process of updating a map of its county highway system under the auspices of I.C. § 40–202. Since there exists nothing in the record upon which the Commissioners could make a decision as to the public status of these roads, Homestead and Hall argue the roads were selected as public simply because (1) they were published on the Big Sky Map, and (2) were "colored" as public roads, at the whim of the Commissioners. Therefore, Homestead and Hall contend they were under no obligation to initiate proceedings to vacate the roads at issue, the Commissioners had no authority to abandon any interest in these roads, and there is no action that could lawfully be taken by the Commissioners on remand with respect to these roads. The Commissioners contend the roads were properly included on the map because they had been included on prior official county highway maps, and the Commissioners believed that the highways occupied a public status.

## A. The Commissioners' Actions under I.C. § 40–202

Idaho Code § 40–202 provides the manner in which a board of county commissioners or highway district designates public highways and rights-of-way. Initially, the statute outlines the procedure to be followed in adopting the original highway system map. It states as follows:

(1) The initial selection of the county highway system and highway district system may be accomplished in the following manner:

(a) The board of county or highway district commissioners shall cause a map to be prepared showing the general location of each highway and public right-of-way in their jurisdiction, and the commissioners shall cause notice to be given of intention to adopt the map as the official map of that system, and shall specify the time and place at which all interested persons may be heard.

(b) After the hearing, the commissioners shall adopt the map, with any changes or revisions considered by them to be advisable in the public interest, as the official map of the respective highway system.

I.C. § 40–202(1). The County highway system is defined as all public highways in a county except those belonging to city, state or federal agencies. *See* I.C. § 40–104(6).

The statute also provides that a county must revisit and publish its official highway map every five years, presumably to delete any roads that may have been vacated during the previous years, or to add any roads that may have been acquired, developed and/or validated since the last adoption of the map. I.C. § 40–202(6). Under § 40–202, Teton County is clearly obligated to adopt an official map of the County's highway system. However, the process contemplates that a county will first establish what public highways are located within the county, and then adopt the official map of the highway system, which shows the approximate location of these highways. The process by which a county selects a highway system or creates an official highway map does not also serve to adjudicate the public status of any roads

within the county or create new public highways or rights-of-way.

There are specific ways in which a public highway may be created. I.C. § 40–202(3) provides in part:

Highways laid out, recorded and opened as described in subsection (2) of this section [by acquiring real property and then adopting a resolution establishing an interest in the property as a highway], by order of a board of commissioners, and all highways used for a period of five (5) years, provided they shall have been worked and kept up at the expense of the public, or located and recorded by order of a board of commissioners, are highways.

■ The first problem in this case is that although the Commissioners represent that there were at least two earlier maps adopted pursuant to their statutory duty to create an official county highway map, those maps are not in the record, nor is there any indication in the record of the Commissioners ever having determined which roadways they believed were public as a result of their records, minutes and resolutions or duly-recorded orders creating, accepting or defining public highways within the County. Thus, while the Commissioners contend these three roads at issue were properly placed on an official map, this Court has no way to determine whether any of these three disputed roads were ever created as public highways in the first instance, whether they have been maintained, whether they were originally created by prescriptive use, and whether they have ever been abandoned or vacated. On the basis of this record, there is simply no way to determine whether the roads running across the Homestead and Hall properties were properly shown on the map.

When fulfilling their duty under I.C. § 40–202(6) to update and publish their official highway map, county commissioners should only adopt a map of already existing and accepted public highways; it is not a tool, in and of itself, to create those public highways. Certainly, if a road is not properly created as a public highway, its inclusion on an official county highway system map does not make it so, nor does it impose any requirement on a property owner to vacate what has never

been established as a public roadway. The Commissioners erred in placing these three disputed roads on the purported official map and requiring Homestead and Hall to initiate proceedings to vacate them, absent clear evidence these roads were established existing public highways. Once Homestead and Hall challenged these roads' inclusion on the map, the burden shifted to the Commissioners to prove the public status of the disputed roads, not presume their public status simply because they had been designated as such on the official map.

## B. Order Dismissing a Portion of the Appeal as Moot

■ After Homestead and Hall filed judicial review proceedings with the district court, but before a decision was rendered, the Commissioners apparently acknowledged there were some problems because they then decided to vacate two of the subject roads listed on the map. The district court determined that since the Commissioners had vacated any claim of public interest in Road # 1 and a portion of Road # 2, Homestead's concerns were addressed and, therefore, the court dismissed the appeal as to Homestead as moot. This conclusion was in error.

Although the Commissioners did attempt to vacate these two roads, they did not properly follow the statutory procedures under I.C. § 40–203 for doing so. Further, and more problematically, if these roads were never properly designated and accepted as public highways to begin with, then the County had no statutory ability to vacate a private roadway. Proceedings to vacate a highway can only be applicable to a public road. *See Burrup v. Stanger*, 114 Idaho 50, 753 P.2d 261 (Ct.App.1988), *aff'd* 115 Idaho 114, 765 P.2d 139 (1988); *Galvin v. Canyon Highway Dist. No. 4*, 134 Idaho 576, 6 P.3d 826 (2000). Because the record does not reflect any findings made by the Commissioners evidencing the public status of these roads, they should have been stricken from the map upon Homestead's objection (or never shown in the first place, absent some justifiable reason for doing so). The Commissioners' after-the-fact remedial attempt to vacate these roads was a nullity in the ab-

sence of clear evidence that these roads were public highways in the first place. Thus, the issues as to Homestead are not moot.

## C. Order Remanding the Case

After ruling that the Commissioners clearly lacked the authority to adjudicate the legal status of the subject roadways as "highways" in the process of preparing a county highway system map, the district court remanded the proceedings as to the non-vacated roads for findings by the Commissioners in accordance with the principles announced in *Burrup v. Stanger.* That case provided an outline of the necessary evidence and procedures required to establish a county's interest in a roadway as a public highway or right-of-way by prescriptive use. *See Burrup,* 114 Idaho at 53, 753 P.2d at 261; *See also Floyd v. Bd. of Comm'rs of Bonneville County,* 137 Idaho 718, 52 P.3d 863 (2002). While we agree with the district court the case should be remanded back to the Commissioners, the remand should be broader in scope.

Once again, the main problem that led to this dispute was the Commissioners' decision to include the subject roads on the official map apparently without initially making findings or providing evidence that the roads were public in the first place (although since there is no record, we don't know whether this was ever done). The decision to place roads on the county highway system map should be made only after a determination that a particular roadway occupies the status, in fact, of a public highway or right-of-way. Further, the decision of whether or not a road should be considered to be a public highway should be dependent upon that roadway having some basis through dedication, purchase, prescriptive use or some other accepted means of creating a public highway so there is some evidentiary support for the Commissioners' determination to designate a road on the map. Only at that point should the Commissioners adopt an official map of the County's highway system, reflecting all of those roads known to be, at that time, public highways.

Remand is especially important here because the record is devoid of any evidence of what took place in 1991 or 1996, which appar-ently was when Teton County made its initial selection of its public highways. Without this information, it is impossible to determine what evidence was presented to support the Commissioners' decision to accept certain roads as public highways and then include them on the official map, what notice was given, or what objections were made. In fact, there is no indication in the record that the Commissioners have ever made an initial determination of which roads are properly considered public highways. It appears the Commissioners have simply gone about this process by adopting a map by default and asking the public to come in and object if they do not agree with the highways as depicted. While the public should certainly be provided the opportunity to object, the Commissioners should have at least some reasoned basis for designating the roads as public before ever sending the map out for comment.

Therefore, this case is remanded to the Commissioners with instructions to make a determination of which roads within the County should be properly considered as public highways and rights-of-way (if they have not previously done so) based upon objective evidence showing their public status. Once that determination has been made, the Commissioners may properly adopt a valid official map of the highway system in Teton County. Thereafter, every five years, the Commissioners should adopt a map that simply reflects additions or deletions which have occurred during the previous five years.

## D. Attorney Fees

■ Homestead and Hall requested attorney fees pursuant to I.C. § 12–117 incurred in the administrative proceedings before the Commissioners and in the proceedings for judicial review in the district court, under the theory that the Commissioners actions were taken without a reasonable basis in fact or law. The district court declined to award fees on the basis that the Commissioners were simply acting pursuant to a statutory directive in establishing a county highway system map, and the record was inadequate to make an informed decision of what the

Commissioners considered in their proceedings in making a determination that the subject roads should be included on the official map. The court stated that without this information, it was impossible to conclude the Commissioners decision was made without any reasonable support in fact or law. Because the record is not clear, the district court did not abuse its discretion in denying fees.

Homestead and Hall also request attorney fees on appeal pursuant to I.C. §§ 12–117, 12–121, and I.A.R. 41, arguing that the same considerations which support an award of attorney fees in the proceedings below, justify a like award of attorney fees on appeal. Given the nature of these proceedings and the fact we are remanding the case for further deliberations consistent with this opinion, we decline to award fees on appeal as well.

## IV.

## CONCLUSION

This Court is unable to determine, based on the current status of the record, whether the disputed roads at issue were properly included on the County highway map. Therefore, this case is remanded to the Commission to adopt an official map of the highway system of Teton County, after making some determination of which roads in the County qualify as public highways, if the Commissioners have not previously done so. We award costs on appeal to Homestead and Hall.

Chief Justice SCHROEDER and Justices BURDICK and JONES concur.

Justice EISMANN Specially Concurring.

I concur in the majority opinion, but write only to comment further upon the findings that must be made by the Commissioners if they are to include the disputed roads on the county highway map.

2. Prior to 1893, a road could be established by public use for a period of five years, without any requirement that it was worked and kept up at

Idaho Code § 40–202(3) sets forth three classifications of highways that are to be included on the highway map:

(1) Highways that are "laid out, recorded and opened";

(2) Highways that are "located and recorded by order of the board of commissioners," but not opened; and

(3) Highways that were "used for a period of five (5) years, provided they shall have been worked and kept up at the expense of the public."

The highways in the first two categories will have a recorded "deed or other document" establishing that Teton County has acquired an interest in the property for public right-of-way purposes. A copy of such recorded document should be sufficient. Highways in the third category will require evidence showing that the road was used for a period of five years and worked and kept up at the expense of the public.[2]

As the majority states, Idaho Code § 40–202 does not authorize a board of county commissioners to adjudicate the status of any road as public or private. The inclusion of a private road on the highway map does not constitute an adjudication that the road is public. It could have other consequences, however, because members of the public may assert their right to use the road in reliance upon the highway map, leading to conflicts with the landowner.

public expense. *Ross v. Swearingen,* 39 Idaho 35, 225 P. 1021 (1924).