**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

OCT 31 2014

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

COUNTY OF SHOSHONE OF THE
STATE OF IDAHO,

        Plaintiff - Appellant,

  And

GEORGE E. STEPHENSON and NEW
JERSEY MINING COMPANY,

        Plaintiffs,

  v.

UNITED STATES OF AMERICA; et al.,

        Defendants - Appellees.

No. 13-35078

D.C. No. 2:09-cv-00505-REB

MEMORANDUM[*]

Appeal from the United States District Court
for the District of Idaho
Ronald E. Bush, Magistrate Judge, Presiding

Argued and Submitted October 7, 2014
Seattle, Washington

Before: PAEZ, BYBEE, and CALLAHAN, Circuit Judges.

---

     [*]    This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

The County of Shoshone (Shoshone) appeals from the district court's judgment, on cross motions for summary judgment, in favor of the United States and against Shoshone on Shoshone's challenge under the Quiet Title Act of 1972 ("QTA") to the United States' closure of four miles of the Eagle Creek Road in the Idaho Panhandle National Forest. Shoshone's case turns on a single esoteric issue: whether Eagle Creek Road is a public road based on at least five years of regular public use sometime between 1884 and 1893. The United States, while agreeing with the merits of the district court judgment, asserts that Shoshone failed to file its action within the twelve year statute of limitations in 28 U.S.C. § 2409a, and therefore the courts lack jurisdiction to consider Shoshone's claim. We conclude that we have jurisdiction and affirm the district court's rejection of Shoshone's QTA claim.[1]

**1.** 28 U.S.C. § 2409a(g) provides that a civil action under the QTA "shall be barred unless it is commenced within twelve years of the date upon which it accrued" and that "[s]uch action shall be deemed to have accrued on the date the plaintiff . . . knew or should have known of the claim of the United States." We have recognized that the QTA's limitations period is jurisdictional, *see Kingman*

---

[1] Because the parties are familiar with the facts and procedural history, we do not restate them here except as necessary to explain our decision.

*Reef Atoll Invs., L.L.C. v. United States*, 541 F.3d 1189, 1195 (9th Cir. 2008), and have noted that "notice of a government claim that creates even a cloud on that title [to disputed property] may be sufficient to trigger the limitations period." *Michel v. United States*, 65 F.3d 130, 132 (9th Cir. 1995). However, we have been careful to require that the government's claim be clearly adverse to the claimant's interest. *Id.*; *see also McFarland v. Norton*, 425 F.3d 724, 727 (9th Cir. 2005). We have noted that otherwise, "a claimant of a right of access would be forced to bring suit within twelve years even though the government gave no indication that it contested the claimant's right." *Michel*, 65 F.3d at 132.

Here, the United States asserts that the Watershed Environmental Assessment that issued in April 1997, or its supplement that issued in July 1997, placed Shoshone on notice of the United States' adverse claim. It contends that Shoshone's action, which was filed just short of twelve years after the Forest Service's October 1997 decision on the Eagle Creek Restoration Project, is therefore untimely.

We conclude that this action was timely filed, using the Forest Service's 1997 final decision. An environmental assessment is not a decisional document. Rather, its purpose is to help the government and the public evaluate a proposed agency action. The government is not bound to follow any alleged assertion or

3

course of actions proposed in the environmental assessment. Furthermore, we have not found any court decision holding that an environmental assessment commences the running of the QTA's statute of limitations. We decline to hold that Shoshone's action is untimely.

**2.** In 1866, Congress enacted an open-ended grant of a right-of-way for the construction of highways over public lands, which is commonly referred to as "R.S. 2477." Act of July 25, 1866, ch. 262, § 8, 14 Stat. 251, 253, *codified at* 43 U.S.C. § 932, *repealed by* Federal Land Policy and Management Act of 1976, Pub. L. No. 94-579 § 706(a), 90 Stat. 2743. Many of the transportation routes in the West were established under R.S. 2477. *S. Utah Wilderness Alliance v. Bureau of Land Mgmt.*, 425 F.3d 735, 740-41 (10th Cir. 2005). Moreover, the Supreme Court has stated that "Congress intended the QTA to provide the exclusive means by which adverse claimants could challenge the United States' title to real property." *Block v. N. D. ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 (1983).

Although federal law governs the interpretation of R.S. 2477, "in determining what is required for acceptance of a right of way under the statute, federal law 'borrows' from long-established principles of state law, to the extent that state law provides convenient and appropriate principles for effectuating

4

congressional intent." *S. Utah Wilderness Alliance*, 425 F.3d at 768. We agree with the district court and the parties that here we "borrow" Idaho law.

The Idaho Supreme Court in *Galli v. Idaho County*, 191 P.3d 233 (Idaho 2008), held that pursuant to the applicable Idaho law, Rev. St. Idaho Terr. §§ 850-851 (1887), the creation of a highway over public land required that "a road, street, alley or bridge" be "erected or laid out by the public, and [be] used for a period of five years." *Id.* at 238. The court further held that the "use must be regular public use and not casual or desultory." *Id.* at 237, citing *Kirk v. Schultz*, 191 P.2d 266, 268 (1941). In *Kirk*, the Idaho Supreme Court concluded that prior to 1901, "the use by the public of the trail was insufficient, being only casually and desultorily and not regularly used." 119 P.2d at 268. Similarly in *Galli*, the Idaho Supreme Court Idaho found "that evidence is not substantial and competent to support a finding that Race Creek Road was used by the public for a period of five years prior to 1904." 191 P.3d at 238. *See also Sopatyk v. Lemhi County*, 264 P.3d 916. 921-22 (Idaho 2011) (applying the same standard but finding that the road in question existed in 1881).

The historic facts underlying this case are undisputed. The district court noted:

In 1883, in the quintessential rush following the discovery of gold near Prichard Creek (a tributary to the North Fork of the Coeur d'Alene River), the mining camp of Eagle City was thrown down in the area where Eagle Creek joins Prichard Creek. The location was near the first placer claims, and took advantage of one of the few "flats" found in the otherwise heavily timbered and steep countryside." Much of the "rush" to Eagle City took place in the fall and winter of 1883 and into the early months of 1884, when entrepreneurs in Belknap, Montana, (located on the Northern Pacific Railroad's main line) sought ways to take a merchant's profit from the eager gold seekers headed for the Eagle Creek district.

The businessmen set about trying to build the most direct route from Belknap, Montana, to Eagle City. However, by spring 1885, nearby Murray, Idaho, supplanted Eagle City as the center of mining activity in the area. A new road shortened the distance between Belknap and Murray by approximately six miles and altogether avoided Eagle City.

The district court determined that the "ambition" for Eagle Creek Road was never realized and within three or four years it was just a trail; "[e]ven the telegraph line strung next to the Belknap Trail as it was being constructed had been long abandoned." The district court concluded that, after the frenzy, "the great stampede to Eagle Creek collapsed upon itself like the banks of snow dissolving into the spring freshet."

Shoshone does not deny the meteoric rise and fall of Eagle City, but argues that the mining activities and explorations of the "tenacious old-timers who hung

on after the exodus in 1884 . . . reflects activity that is anything but casual or desultory." Shoshone argues that, as a matter of state law, the circumstantial evidence compels a finding of regular public use.

We do not read Idaho case law to compel a finding of regular public use in this case. In *Sopatyk*, 264 P.3d at 921-22, the only case in which the court upheld a right-of-way, there was substantially more evidence of use than exists for Eagle Creek Road. Rather, the amount of circumstantial evidence in this case is more akin to the amount of evidence in *Galli*, 191 P.3d at 238, where the Idaho Supreme Court rejected a right-of-way claim. We conclude that the district court reasonably determined that Idaho law's application to the circumstantial evidence in this case did not compel recognition of Shoshone's claim.

Shoshone's appeal is reduced to challenging the district court's factual findings on the cross-motions for summary judgment. We review for clear error "the trial court's ultimate findings of fact, which were based on inferences made from the undisputed written record." *EEOC v. Maricopa Cnty. Cmty. Coll. Dist.*, 736 F.2d 510, 512-13 (9th Cir. 1984). Under this standard, a finding can be set aside only if "illogical, implausible, or without support in inferences that may be drawn from the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc). Here, the district court's thorough review of the circumstantial

evidence cannot fairly be characterized as illogical, implausible, or lacking support from the record.

The district court's judgment for the United States is **AFFIRMED**.