**IN THE SUPREME COURT OF THE STATE OF IDAHO**
**Docket No. 37186**

| | | |
|---|---|---|
| BRIAN P. SOPATYK, | ) | |
| | ) | |
| Petitioner-Appellant-Cross Respondent, | ) | Boise, August 2011 Term |
| | ) | |
| v. | ) | 2011 Opinion No. 114 |
| | ) | |
| LEMHI COUNTY, LEMHI COUNTY | ) | Filed: November 9, 2011 |
| BOARD OF COMMISSIONERS, LEMHI | ) | |
| COUNTY CLERK-RECORDER, and | ) | Stephen W. Kenyon, Clerk |
| DOES 1-5, in their official and individual | ) | |
| capacities, | ) | |
| | ) | |
| Respondents-Cross Appellants. | ) | |
| | ) | |

Appeal from the Seventh Judicial District of the State of Idaho, Lemhi County. Hon. Joel E. Tingey, District Judge.

The decision of the district court affirming the validation of Anderson Creek Road is <u>affirmed</u>. No attorney's fees are awarded. Costs are awarded to Respondent Lemhi County.

Saetrum Law Offices, Boise, for Appellant. Rodney R. Saetrum argued.

Lemhi County Prosecuting Attorney, Salmon, and Givens Pursley, LLP, Boise, for Respondents. Christopher H. Meyer argued.

_____

W. JONES, Justice

## I. NATURE OF THE CASE

Brian Sopatyk petitions for judicial review of the Lemhi County Board of Commissioners' decision to validate Anderson Creek Road, which runs the length of his property. He contends the road never became public and, if so, was abandoned. He also maintains that the validation was an unconstitutional taking, that it was error for the road easement to be validated at fifty-feet wide, that one of the commissioners was biased against him, that the road illegally invades federal public lands, and that the Board of Commissioners failed to explain why the validation is in the public interest. This Court affirms the validation

1

decision because the road became public by legislative declaration in the late 1800s and was never abandoned.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Gibbonsville, Idaho, is located in Lemhi County, where the central portion of the state juts into Montana. The region was originally public federal land. In the 1860s and 1870s, prospectors discovered gold around what later became Gibbonsville, causing pioneers to begin flooding the area in 1876. They settled Gibbonsville where Anderson Creek runs south into Dahlonega Creek before Dahlonega flows west out of town. Two years later, in 1878, mineral prospectors formed a mining district and a committee to draw up and file a plat for the Gibbonsville townsite with the district. At some point, a road providing access to various mining claims had been constructed running north-south, parallel to Anderson Creek, as the miners' plat and an accompanying description identify a street running north up along Anderson Creek as Main Street. Today, the road is known as Anderson Creek Road ("ACR"). Over the years, the public was generally able to use the road, but it has deteriorated and is now overgrown with brush in some places.

Among the mineral claims that early prospectors filed were two long and narrow gold placers along Anderson Creek, one in 1879 and the other in 1881.[1] These placers were patented as the Anderson Creek Consolidated Placers Nos. 1 and 2 ("the Anderson Placers") in 1897.[2] Brian Sopatyk, Appellant, purchased the Anderson Placers in pieces between 1994 and 1996, and now owns an area of over sixty-six acres. Except for certain spots where it drifts partially into the neighboring Salmon National Forest, ACR runs most of the length of Sopatyk's property.

In 1998, the Lemhi County Board of Commissioners ("the Board") validated ACR as a public road. Sopatyk then filed a lawsuit against the County seeking a writ of prohibition. The district court ordered another hearing before the Board, which occurred in 2004. The Board unanimously validated ACR, finding that the road had been made public by territorial legislative declaration in 1881, an order of the County Commissioners in 1892, prescription, common law dedication, and under R.S. 2477, a federal statute allowing local and state governments to

---

[1] A party that locates and files a claim may extract minerals, but does not own the land itself until the claim is patented. James D. Parriott, *Mining Rights in Public Land*, 34 TEX. L. REV. 892, 901 (1956).

[2] "A placer is a superficial deposit, usually of auriferous (goldbearing) gravels, found in the beds of ancient rivers or valleys." Carl J. Mayer, Comment, *The 1872 Mining Law: Historical Origins of the Discovery Rule*, 53 U. CHI. L. REV. 624, 625 n.3 (1986). Placer claims contrast with lode claims, which are for veins and deposits that have a defined formation underground. *Id.*

establish public roads on federal lands.  After the Board's decision, Sopatyk requested and was granted another hearing before the Board in part to present evidence of bias on the part of Commissioner Joseph Proksch, who was Chairman at the time of the 2004 hearing and served as the hearing officer.  After convening a third time to publicly deliberate the matter, this time without Proksch, the Board unanimously affirmed its decision and found that Commissioner Proksch was not biased.

Sopatyk petitioned for judicial review in the case,[3] and the district court affirmed on the grounds that ACR was legislatively declared a public road in 1881 and that there had been a common law dedication when the miners committee filed a plat with the Mining District in 1878. Sopatyk appealed to this Court, where he argues that the road has not become public under any of the methods described in the Board's order and that, even if the road did become public, it has since been passively abandoned. He also contends that validating the road was an unconstitutional taking, it illegally intrudes on Forest Service land, Commissioner Proksch was biased against him, and the Board did not properly examine whether validating ACR was in the public interest.

### III. ISSUES ON APPEAL

**1.**    Whether ACR is a public road under R.S. 2477?

**2.**    Whether the County passively abandoned ACR prior to 1963?

**3.**    Whether validating ACR would be an unconstitutional taking?

**4.**    Whether the Board failed to determine whether validating ACR was in the public interest under I.C. § 40-203A?

**5.**    Whether the County exceeded its authority by validating a fifty-foot-wide roadway?

**6.**    Whether the Board exceeded its authority by validating a road that intrudes onto federal lands?

**7.**    Whether a Commissioner's alleged bias violated Sopatyk's statutory rights under I.C. § 31-807A?

**8.**    Whether either party is entitled to attorney's fees on appeal?

---

[3] State records indicate that Sopatyk filed a petition for judicial review in CV-98-266, the case that he originally initiated with a petition for a writ of prohibition.  Further, the district court's memorandum decision appears under the State's register of actions for the same case.  Nonetheless, a separate case number, CV-07-402, appears on all of the documents in the record for this case, including Sopatyk's petition for judicial review and the memorandum decision.  He also paid a separate filing fee in this case.  It therefore appears that Sopatyk correctly filed a new petition separate from his preexisting litigation to pursue judicial review in this case. *See Cobbley v. City of Challis*, 143 Idaho 130, 133, 139 P.3d 732, 735 (2006) ("[A] petition for judicial review of a road-validation decision of a local governing board is a distinct form of proceeding and cannot be brought as a pleading or motion within an underlying civil lawsuit.").

IV. STANDARD OF REVIEW

On appeal from a validation decision in which the district court acted in an appellate capacity, this Court independently reviews the County record. *Homestead Farms, Inc. v. Bd. of Comm'rs*, 141 Idaho 855, 858, 119 P.3d 630, 633 (2005). Idaho Code section 40-208 governs judicial review of validation proceedings. *Floyd v. Bd. of Comm'rs*, 131 Idaho 234, 238, 953 P.2d 984, 988 (1998). It provides that this Court may reverse or modify the County's decision if the appellant's substantial rights have been prejudiced because the County's decisions are:

(a) In violation of constitutional or statutory provisions;
(b) In excess of the statutory authority of the commissioners;
(c) Made upon unlawful procedure;
(d) Affected by other error of law;
(e) Clearly erroneous in view of the reliable, probative and substantial information on the whole record; or
(f) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion.

I.C. § 40-208(7). This Court will not substitute its judgment for that of the County as to the weight of the evidence on questions of fact. *Id.* It will uphold the County's findings unless they are unsupported by substantial competent evidence. *State Dep't of Health & Welfare v. Roe*, 139 Idaho 18, 21, 72 P.3d 858, 861 (2003).

## V. ANALYSIS

### A.  ACR Is a Public Road Under R.S. 2477

Section 8 of the Mining Act of 1866 provided: "The right of way for the construction of highways over public lands, not reserved for public uses, is hereby granted." An Act Granting the Right of Way to Ditch and Canal Owners over the Public Lands, and for Other Purposes, ch. 262, § 8, 14 Stat. 251, 253 (1866) (repealed 1976). This provision is more popularly known as R.S. 2477 due to its subsequent codification in the Revised Statutes as R.S. § 2477 (1873). The parties agree that, prior to July of 1897, when Sopatyk's predecessors in interest obtained a patent for the Anderson Placers, his land was federal property. Thus, if ACR became a public road under R.S. 2477, it must have occurred before July of 1897.

This Court has held that R.S. 2477 was a standing offer by the federal government to grant rights-of-way on public land to the states and that it can be an independent vehicle for creating a public road if there is "some positive act or acts on the part of the proper public authorities clearly manifesting an intention to accept such grant with respect to the particular highway in question." *Farrell v. Bd. of Comm'rs*, 138 Idaho 378, 384, 64 P.3d 304, 310 (2002)

4

(quoting *Kirk v. Schultz*, 63 Idaho 278, 283, 119 P.2d 266, 268 (1941)). This standard is "more lax than the requirements set forth in the state road creation statute." *Id.* at 384, 64 P.3d at 310. In *Farrell*, this Court found R.S. 2477 satisfied because there was an entry in the County Commission's minutes log from 1901 expressly accepting a dedication of the disputed road. *Id.*

In this case, by contrast, there is no order or minute entry by the Board or any other order by a public authority accepting ACR as a public road. In 1878, however, a committee of local miners filed a plat with the mining district creating a road along Anderson Creek. The County asserts that even though the miners committee was an informal body, the plat is a positive act by a proper public authority for R.S. 2477 purposes because "[t]his is how things were done on Idaho's frontier."

The County erred as a matter of law by ruling that the miners committee could be a "public authority" with the power to create state rights-of-way on federal lands. There appears to be no legal authority suggesting that an informal, apparently unelected committee is empowered by state law to file plats creating public streets. This is especially true in light of the fact that years before the miners committee was formed, the Territorial Government had already created Lemhi County and its Board of Commissioners, which would have been the proper public authority for declaring roads in Gibbonsville. An Act Creating and Organizing the County of Lemhi, §§ 1, 3–4, Laws and Resolutions Passed by the Fifth Legislative Assembly of the Terr. of Idaho 734, 734–35 (1869).

State law governs the manner in which a road on federal property becomes public under R.S. 2477. *Galli v. Idaho Cnty.*, 146 Idaho 155, 160, 191 P.3d 233, 238 (2008); *accord Standage Ventures, Inc. v. Arizona*, 499 F.2d 248, 250 (9th Cir. 1974); *United States v. Pruden*, 172 F.2d 503, 505 (10th Cir. 1949); *Smith v. Mitchell*, 21 Wash. 536, 540, 58 P. 667, 668 (1899) ("[Under R.S. 2477,] a highway may be established across or upon such public lands in any of the ways recognized by the law of the state in which such lands are located . . . ."). This includes territorial laws relating to road creation. *Galli*, 146 Idaho at 160, 191 P.3d at 238.

Apparently, to help ensure that pioneers could access and settle Idaho's vast undeveloped areas, in 1881, the Territorial Legislature enacted legislation providing: "All roads or highways laid out or now traveled, or which have been commonly used by the public . . . in the several counties of this Territory, are hereby declared county roads." An Act Regulating Roads, Highways, and Public Thoroughfares in Idaho Terr., § 1, Gen. Laws of the Terr. of Idaho 277,

5

277–78 (repealed 1885). In other words, "all roads, trails, streets and thoroughfares, used as such, were highways." *Kosanke v. Kopp*, 74 Idaho 302, 305, 261 P.2d 815, 816 (1953) (referring to An Act Concerning Roads, Highways, Trains, and Public Thoroughfares, § 1, Compiled and Rev. Laws of the Terr. of Idaho 677, 677 (amended 1881), a virtually identical earlier enactment).

To satisfy the 1881 law, the use must be regular, not casual or desultory. *Kirk v. Schultz*, 63 Idaho 278, 282–84, 119 P.2d 266, 268–69 (1941). When determining if the public is using a road, direct evidence is not required, but "there must be sufficient circumstantial evidence to support any inferences." *Galli*, 146 Idaho at 160, 191 P.3d at 238.

There is substantial evidence that ACR existed in 1881. In 1878, a miners committee filed a plat depicting a seventy-five-foot-wide road labeled "Main Street" going north, flanked by numbered lots on each side, and intersecting with two other streets running east-west. The accompanying plat description states that the road up Anderson Creek was to be called Main Street and was "to be left open and persons taking lots are to appoint a committee to see that the said roads are made and kept open and passable." Books and newspaper reports in the record state that Main Street received its current name around the turn of the twentieth century, due in part to the fact that placer mining washed away a section of the road along with the buildings next to it in 1898. The road was likely repaired, as an 1899 map, a 1907 U.S. Forest Service map, and a 1913 U.S. Geological Survey map all show a road running north along Anderson Creek.

Further, there is also substantial evidence from which the Board could infer that the public commonly used ACR in 1881. A photograph dating to 1878 depicts two roads lined with structures intersecting in the center of Gibbonsville, one of which was undoubtedly ACR. Published historical accounts included in the record note that most of the mineral deposits around Gibbonsville had been found by the end of 1877, including a number of claims upstream from town along Anderson Creek. A deed specifically indicates that by 1881 at least four mining claims were located adjacent to or very near ACR along its whole length. It was reasonable for the Board to validate ACR because it was open and commonly used by the public in 1881.

**B.** **There Is Substantial Evidence that the County Did Not Passively Abandon Anderson Creek Road**

6

Sopatyk responds that, even if ACR did become a public road, it was later passively abandoned.[4] He states that there is no evidence that the road had been used or maintained at all before the 1960s.[5] Evidence in the record shows that by 1937, the County did not include ACR on the county highway maps. Sopatyk also offers two blurry aerial photographs that seem to show that ACR was no longer clearly defined by the end of the 1950s.

Before 1963, the relevant statute provided: "A road not worked or used for the period of five years ceases to be a highway for any purpose whatever." Rev. Stat. of Idaho Terr. § 852 (1887) (repealed 1963).[6] To establish abandonment, the challenger must show both that the road was not maintained and that it was not used for the statutory period. *Taggart v. Highway Bd. for N. Latah Cnty. Highway Dist.*, 115 Idaho 816, 817, 771 P.2d 37, 38 (1988). "As to the level of use required to prevent a finding of abandonment, a showing of 'any continuous use no matter how slight, by the public, is sufficient.'" *Farrell*, 138 Idaho at 385, 64 P.3d at 311 (quoting *Taggart*, 115 Idaho at 818, 771 P.2d at 39).

The County had substantial evidence on which to find that Sopatyk could not meet the burden of showing that the road went unused for any five year period. Sopatyk gives no affirmative evidence that the public ceased using the road for any five year span before 1963. On the other hand, a U.S. Geological Survey report states that mining was active until 1908 in the Clara Morris group of mines, which lie at the end of ACR. The record contains letters and affidavits showing that the road was used for logging in the 1940s and mining in the 1920s through the 1970s. There was also evidence that someone built and lived in a cabin and maintained an orchard on ACR in 1937. Since 1906, ACR has accessed public forest lands, a reasonable basis upon which to infer that the public has been using the road for recreation and wood gathering. The County therefore correctly held that ACR was not abandoned.

C. **Validating Anderson Creek Road Was Not an Unconstitutional Taking**

---

[4] The parties agree that the County never formally abandoned ACR.

[5] Sopatyk cites a case discussing a later version of the 1887 abandonment statute, I.C. § 1139 (1901), and does not argue that the County abandoned ACR after the 1960s.

[6] In 1963, the Legislature amended this statute to state: "A road *established by prescription and* not worked or used for the period of five years ceases to be a highway for any purpose whatever." Act of Feb. 8, 1963, ch. 6, § 1, 1963 Idaho Sess. Laws 17, 17 (codified at I.C. § 40-104) (emphasis in original, indicating new language). In 1986, the Legislature repealed the passive-abandonment statute altogether, replacing it with a formalized process for vacating pubic highways. Act of April 3, 1986, ch. 206, § 3, 1986 Idaho Sess. Laws 512, 513–14 (amending I.C. § 40-203, the provision that previously provided for passive abandonment).

Sopatyk asserts that validating the road was an unconstitutional taking for which he has not been compensated. Article I, section 14 of the Idaho Constitution[7] and the Fifth Amendment of the U.S. Constitution[8] both prohibit the government from taking private property for public use without just compensation. *Statewide Constr., Inc. v. Pietri*, 150 Idaho 423, 429, 247 P.3d 650, 656 (2011).

As explained above, there was substantial evidence upon which the Board could find that ACR became a public road by legislative declaration in 1881. Sopatyk's predecessors in interest, by comparison, did not patent the Anderson Placers until 1897. Until that time, they did not actually own the land. Sopatyk's Takings Clause claim is therefore without merit, as neither he nor his predecessors have been deprived of any property. *See Lucas v. S. C. Coastal Council*, 505 U.S. 1003, 1015, 112 S. Ct. 2886, 2893 (1992) (stating that a taking occurs when the government "compel[s] the property owner to suffer a physical 'invasion' of his property").

## D.  The Board Did Not Fail to Determine Whether Validating the Road Was in the Public Interest

Although the Board validated ACR, Sopatyk complains that the Board at no point expressly explained why validating ACR was in the public interest. The Idaho Code mandates that after holding validation proceedings the Board "shall determine whether validation of the highway or public right-of-way is in the public interest" and enter an order accordingly. I.C. § 40-203A(3). This statute contrasts with the analogous section governing highway abandonment-and-vacation decisions under I.C. § 40-203(1)(h). That section provides that after a hearing to vacate a highway, the Board must issue an order, which "shall be written and shall be supported by findings of fact and conclusions of law." Section 40-203A(3) notably omits a specific requirement for written findings. This statutory requirement by its plain language governs the substantive standard the Board must apply when deciding whether to validate a road.

Likewise, the highway-validation statute is quite different from the Idaho Administrative Procedure Act, which requires that agency orders contain reasoned explanations of decisions and that factual findings "shall be accompanied by a concise and explicit statement of the underlying facts of record supporting the findings." I.C. § 67-5248(1)(a). It also differs from the Local

---

[7] The Idaho Constitution provides in relevant part: "Private property may be taken for public use, but not until a just compensation, to be ascertained in the manner prescribed by law, shall be paid therefor." IDAHO CONST. art. I, § 14.

[8] The Fifth Amendment states that no person shall "be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation." U.S. CONST. amend. V.

Land Use Planning Act, which requires written decisions, reasoning, and citation to the facts relied upon in a decision. I.C. § 67-6535(2); *Evans v. Teton Cnty.*, 139 Idaho 71, 80, 73 P.3d 84, 93 (2003).

This Court's role, therefore, is simply to determine whether it was clear error for the Board to determine that validating ACR was in the public interest. I.C. § 40-208(7); *but cf. Jensen v. Siemsen*, 118 Idaho 1, 5, 794 P.2d 271, 275 (1990) (reviewing for clear error the Industrial Commission's decision regarding whether an employee had left a job due to sexual harassment even though the Commission did not specifically make findings regarding good cause). This Court may therefore affirm the Board's order even though it does not cite specific facts to support its public-interest finding.

There is substantial evidence that validating ACR would be in the public interest. This road became public while the underlying land was federal property. The Legislature has recognized that "existing federal land rights of way are extremely important to all of Idaho's citizens. Two-thirds of Idaho's land is under control of the federal government and access to such federal lands is integral to public use." Act of Mar. 25, 1993, ch. 142, § 1, 1993 Idaho Sess. Laws 375, 376 (creating I.C. § 40-204A, governing creation of public thoroughfares under R.S. 2477). A number of people stated or testified on the record that they regularly use ACR to access the Salmon National Forest for recreation and wood gathering. Further, the Forest Supervisor of the Salmon-Challis National Forest sent a letter to the Board stating that "we believe the best interests of the public would be served" by validating ACR so that the public can reach the National Forest. The Board correctly determined that it is in the public interest for ACR to be a public highway.[9]

### E. The County Has Authority to Validate Anderson Creek Road Even Though It Intrudes into a National Forest

Sopatyk next argues that the Board lacks the authority to validate ACR because in some places it drifts onto land owned by the U.S. Forest Service. As described above, however, R.S. 2477 expressly permitted states to establish rights-of-way on federal land so long as the property

---

[9] Sopatyk raises another similar argument. He notes that at the validation proceedings, the Board must "consider all information relating to the proceedings." I.C. § 40-203A(2)(e). He asserts that the Board violated this provision because it did not cite the record when setting forth its factual findings. Because the text of this rule merely tells the Board what to consider, not what to write in an order or decision, it does not require specific citations to the record. This Court's role is therefore limited to reviewing the correctness of the Board's legal conclusions and the sufficiency of the evidence underlying its factual findings.

is in the public domain. *Galli*, 146 Idaho at 159, 191 P.3d at 237. ACR became a public road by legislative declaration. It was not until 1906 that President Theodore Roosevelt created the Lemhi Forest Reserve, withdrawing the land around Gibbonsville from the public domain. Proclamation No. 672, 34 Stat. 3248, 3248–49 (Nov. 5, 1906).[10] ACR was therefore a public road before the underlying land became ineligible for such development. Further, the Board did not create new public rights when it validated ACR in 2005, as validation proceedings merely confirm preexisting public rights in state roads. *Galvin v. Canyon Highway Dist. No. 4*, 134 Idaho 576, 579, 6 P.3d 826, 829 (2000) (citing I.C. § 40-203A). It was therefore within the County's legal authority to validate ACR even if it does invade National Forest land.

## F. The County Was Within Its Statutory Authority to Validate ACR as a Fifty-Foot-Wide Road

Sopatyk notes that even if the County can validate ACR, the road's travelway is presently only about ten feet wide. He asserts that it was beyond the Board's statutory authority to validate ACR at fifty feet wide. As explained above in Parts V.A and V.B, the Board was correct to hold that ACR became a public road by legislative declaration. From 1887 forward, the Legislature mandated: "All highways, except alleys and bridges, must be at least fifty feet wide except those now existing of a less width." Rev. Stat. of Idaho § 932 (1887). This 1887 statute is the progenitor of today's I.C. § 40-2312, which similarly states: "All highways, except bridges and those located within cities, shall be not less than fifty (50) feet wide, except those of a lesser width presently existing."[11] Therefore, all highways are fifty feet wide unless a lesser width is established. Neither side presented any evidence establishing the road's width. As discussed in Part V.A, ACR was likely seventy five feet wide in 1881. Therefore, the Board did not exceed its statutory authority to validate Anderson Creek Road at fifty-feet wide.

## G. The Board Did Not Act Arbitrarily or Abuse Its Discretion Due to Commissioner Bias

---

[10] This portion of the Lemhi Forest Reserve was later transferred to the Salmon National Forest. Exec. Order No. 841 (June 26, 1908).

[11] This statute provides in relevant part:

> All highways, except bridges and those located within cities, shall be not less than fifty (50) feet wide, except those of a lesser width presently existing, and may be as wide as required for proper construction and maintenance in the discretion of the authority in charge of the construction and maintenance.

I.C. § 40-2312.

Sopatyk last argues that Commissioner Proksch, the hearing officer during the validation hearing, was biased, causing the Board's decision to be arbitrary and an abuse of discretion under I.C. § 40-208(7)(f). Sopatyk does not raise a due process argument; rather, the only authority he cites is statutory. According to I.C. § 31-807A, no county commissioners may be directly or indirectly interested in "any contract made by the board or other person on behalf of the county . . . [for] the opening or improvement of roads." Sopatyk asserts that Commissioner Proksch violated this statute because he has an ownership interest in several properties within ten miles of Gibbonsville.[12]

Commissioner Proksch did not violate I.C. § 31-807A. The plain language of this statute applies only to county contracts for the opening or improving of roads. A validation proceeding, by contrast, does not involve any contract, but results in an order declaring a road to be, or not to be, public. I.C. § 40-203A(3). Validation proceedings therefore do not implicate road contracts. Sopatyk's argument regarding I.C. § 31-807A is therefore without merit.

## H.     Neither Party Is Entitled to Attorney's Fees

Sopatyk requests attorney's fees on appeal under I.C. § 12-121. This Court has already explicitly held that I.C. § 12-117 is the exclusive means for seeking attorney's fees against the entities to which it applies. *Smith v. Wash. Cnty.*, 150 Idaho 388, 392, 247 P.3d 615, 619 (2010); *Potlatch Educ. Ass'n v. Potlatch Sch. Dist. No. 285*, 148 Idaho 630, 635, 226 P.3d 1277, 1282 (2010). Sopatyk is therefore not entitled to attorney's fees.

The County requests attorney's fees under I.C. § 12-117. This section was amended in 2010 and now states:

> Unless otherwise provided by statute, in any administrative proceeding or civil judicial proceeding involving as adverse parties a state agency or political subdivision and a person, the state agency or political subdivision or the court, as the case may be, shall award the prevailing party reasonable attorney's fees, witness fees and other reasonable expenses, if it finds that the nonprevailing party acted without a reasonable basis in fact or law.

---

[12] Of the four parcels in which Proksch has an interest, only one is near ACR. Proksch owns an undivided one-quarter interest in an irrigated pasture along Highway 93 roughly a mile from ACR. This land is not adjacent to ACR or to the public lands accessed by ACR. Sopatyk asserts that Proksch's property interest "may be affected by the validation and improvement of ACR," but cites only the opinion of a real estate agent who did not visit the parcel but viewed the area on Google Earth, an internet application that displays satellite images of the planet. Further, as explained in Parts V.A and V.B, the evidence adduced during the hearing shows that the public already generally uses ACR and considers it public.

11

I.C. § 12-117 (emphasis added). In *Smith*, this Court noted that, by amending section 12-117, the Legislature was likely responding to an earlier decision, *Rammell v. Idaho State Dept. of Agric.*, 147 Idaho 415, 210 P.3d 523 (2009). *Rammell* found that the prior version of section 12-117 did enable courts to award fees for judicial review of administrative decisions, but did not enable agencies to award fees during administrative proceedings. *Id.* at 422–23, 210 P.3d at 530–31.[13] The amended statute provides for fees in "any administrative proceeding or civil judicial proceeding," which, as this Court held in *Smith*, has the opposite effect of its predecessor— courts may not award fees in review of administrative decisions, but agencies can now award fees during administrative proceedings. *Smith*, 150 Idaho at 392, 247 P.3d at 619.

The County acknowledges that *Smith* controls here, but asserts that this Court should overrule *Smith* because the Legislature intended to expand the availability of attorney's fees, not bar fee awards in administrative appeals. It points to the legislative history of the 2010 amendment as evidence that the Legislature inadvertently drafted section 12-117 to prohibit awards in petitions for review of administrative decisions.

Stare decisis requires this Court to follow controlling precedent unless it is manifestly wrong, proven to be unjust or unwise, or overruling it is necessary in light of obvious principles of law and justice. *Grease Spot, Inc. v. Harnes*, 148 Idaho 582, 585, 226 P.3d 524, 527 (2010). Interpreting a statute is an issue of law over which this Court exercises free review. *State v. Doe*, 147 Idaho 326, 327, 208 P.3d 730, 731 (2009). Although this Court strives foremost to give effect to the Legislature's intent, any statutory interpretation must begin by applying a provision's plain and ordinary meaning. *Wheeler v. Idaho Dep't of Health & Welfare*, 147 Idaho 257, 263, 207 P.3d 988, 994 (2009).

This Court's interpretation of section 12-117 was not manifestly wrong. As this Court explained in *Smith*, the plain language of that section enables the relevant adjudicative body to award fees only in administrative proceedings or in civil judicial proceedings. Administrative proceedings are, by definition, proceedings not before a court, while civil judicial proceedings are, by definition, proceedings in court commenced by a complaint. *Smith*, 150 Idaho at 391,

---

[13] The earlier section 12-117 read:

> Unless otherwise provided by statute, in any administrative or civil judicial proceeding involving as adverse parties a state agency, a city, a county or other taxing district and a person, the court shall award the prevailing party reasonable attorney's fees, witness fees and reasonable expenses, if the court finds that the party against whom the judgment is rendered acted without a reasonable basis in fact or law.

247 P.3d at 618. This case meets neither definition because it originated in court with a petition for judicial review. *Id.*

Further, there is no obvious principle of justice at stake here. The courts' very jurisdiction over administrative appeals is controlled by the Legislature, including the specific issue of when parties may receive attorney's fees. *See Laughy v. Idaho Dep't of Transp.*, 149 Idaho 867, 870, 243 P.3d 1055, 1058 (2010); *see also PHH Mortg. Servs. Corp. v. Perreira*, 146 Idaho 631, 641, 200 P.3d 1180, 1190 (2009). Since Idaho follows the "American Rule" for attorney's fees, no fee awards are available absent contractual or statutory authority. *Mortensen v. Stewart Title Guar. Co.*, 149 Idaho 437, 447–48, 235 P.3d 387, 397–98 (2010). Having allowed parties to bring petitions for judicial review in the first place, the Legislature could reasonably have intended to withhold fee awards in such cases. No fundamental principle of law requires attorney's fees in judicial review of administrative decisions, nor is there any basic injustice in requiring parties in such proceedings to pay their own attorneys. This Court must apply the plain and unambiguous language in the statute and adhere to its prior controlling precedent.

## VI. CONCLUSION

This Court affirms the judgment of the district court validating Anderson Creek Road because it became public by legislative declaration. Neither party is entitled to attorney's fees on appeal. Costs are awarded to the County.

Chief Justice BURDICK and Justices EISMANN, J. JONES and HORTON CONCUR.