# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 47548

| | | |
|---|---|---|
| GLORIA PALMER, TRUSTEE OF THE PALMER FAMILY TRUST dated March 26, 2004, | ) ) ) ) | |
| Petitioner-Appellant, | ) ) | |
| v. | ) ) | |
| EAST SIDE HIGHWAY DISTRICT, a political subdivision of the State of Idaho; RANDE ALVIN WARNER and DEBRA JANE WARNER, husband and wife; STEFFEN A. TEICHMANN and ALLYSON Y. TEICHMANN, husband and wife, | ) ) ) ) ) ) ) | Boise, August 2020 Term<br><br>Opinion Filed: December 10, 2020<br><br>Melanie Gagnepain, Clerk |
| Respondents-Respondents on Appeal, | ) ) | |
| and | ) ) | |
| DOES 1-10, | ) ) | |
| Respondents. | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Rich Christensen, District Judge.

The judgment of the district court is <u>affirmed</u>.

Macomber Law, PLLC, Coeur d'Alene, for appellant Gloria Palmer, Trustee of the Palmer Family Trust. Arthur B. Macomber argued.

James Vernon & Weeks, P.A., Coeur d'Alene, for respondent East Side Highway District. Susan P. Weeks argued.

Fidelity National Law Group, Seattle, Washington, for respondents Rande & Debra Warner. Matthew R. Cleverley argued.

Nathan S. Ohler, Ramsden, Marfice, Ealy & DeSmet LLP, Coeur d'Alene, for respondents Steffen & Allyson Teichmann.

———————————

1

STEGNER, Justice.

This case involves a highway right-of-way proposed and approved in 1908 by the Kootenai County Board of Commissioners (the Board), then purportedly abandoned by it in 1910. This appeal arises from a decision of the East Side Highway District, the Board's successor-in-interest, in which it declined to validate this highway right-of-way.

In 1908, the Board accepted a viewers' report depicting Leonard Road No. 2 as a right-of-way and approved it as a public highway. In 1910, the Board purportedly abandoned the right-of-way, according to the Board's minutes. In 2017, Gloria Palmer, Trustee of the Palmer Family Trust (the Trust) requested that the District validate the right-of-way. This was opposed by Rande and Debra Warner (the Warners), and Steffen and Allison Teichmann (the Teichmanns), over whose land the purported right-of-way traversed. The Warners sought to have the right-of-way abandoned. The Highway District initiated road validation proceedings, after which it declined to validate Leonard Road No. 2. After this decision, the Highway District granted a motion for reconsideration and reopened the public hearing. After hearing additional evidence and public comments, the Highway District again declined to validate the purported right-of-way.

The Trust petitioned the district court for judicial review. The district court affirmed the Highway District's decision. The Trust now appeals. For the reasons set out below, we affirm.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

### A. The Historical Background of the Road.

In 1908, August Huelsip and several other affected property owners petitioned the Board to survey and establish a public road near Rose Lake in rural Kootenai County. The Board granted this petition on June 10, 1908. Leonard Road No. 2 was surveyed pursuant to an order by the Board in August 1908.[1] According to the Board's 1908 Journal, the Road was accepted as part of a surveyor and viewers' report on September 16, 1908. The estimated cost of building the road was $800.

On July 13, 1910, the Board "ordered that the Leonard Road No[.] 2 be abandoned for the reason that the expense incurred in building said road would be greater than the amount of traffic across said road would justify." This was documented in the minutes of the Board's 1910 Journal.

---

[1] This right-of-way has been alternately called "Leonard Road No. 2," "Road #231," or "Leonard Road #231." In this opinion, the right-of-way will simply be referred to as "the Road."

There is a factual dispute as to whether any physical roadway was ever actually built following the Board's acceptance of the right-of-way in August 1908. Numerous maps in the record either depict or omit a roadway following the right-of-way. The Kootenai County Road Book shows the Road with a penciled-in notation "Not built" beneath it; however, the annotation is undated, and it is unclear who wrote it.

In addition, the properties over which the Road purportedly crossed have changed hands numerous times, and have been combined and separated in various ways in the over one hundred years that have followed. One lot (Government Lot 8, now owned by the Trust) was deeded to the Board in 1931 by the Kootenai County tax collector after its then-owner failed to pay the property taxes. Government Lot 8 was then sold by the Board at a tax sale auction in 1934 to a predecessor-in-interest to the Trust.

**B. Validation Proceedings before the Highway District.**

In 2016, the Warners owned portions of Government Lots 2, 3, and 4, over which the purported right-of-way crossed. The Teichmanns also owned a portion of Government Lot 4. The Trust owned property west of the Warners' property, and had just purchased another piece of property to the south of the Warners' property, Government Lot 8.

In 2016, the Trust requested that the Highway District record the viewers' report depicting the Road. The Highway District did so, recording it as Instrument No. 256246 on September 14, 2016. In October 2016, the Warners attended a Highway District meeting and stated that the Road had never been built and, therefore, had been abandoned by operation of law.

In March 2017, the Trust requested a letter from the Highway District confirming that the Road was a public right-of-way. The Highway District provided this letter on March 30, 2017. In the months following, the Trust planned to have a survey done to set out the precise location of the Road. This survey began on July 12, 2017, during which members of the Palmer family and their surveyors entered the Warners' property. The Warners ordered them to leave, and the surveyors and Palmer family members ultimately complied after the Kootenai County Sheriff's Office was called to the scene.

In November 2017, the Trust requested approval from the Highway District to open a portion of the Road, which would have provided access to Government Lot 8. On November 20, 2017, the Highway District adopted a resolution to initiate road validation proceedings regarding

the Road, and set a date for the public hearing. Adjacent property owners were notified and notice of the public hearing was published.

The Warners disputed the existence of the right-of-way and sought to have it abandoned and vacated even if it were found to exist. They twice requested a continuance of the public hearing regarding validation to allow their petition to vacate and abandon the road to be heard at the same time. The Teichmanns also opposed validation of the Road. The Highway District declined the Warners' requests, electing to proceed with only the validation hearing as scheduled.

On January 15, 2018, the public hearing regarding validation was held before the Highway District's commissioners. A staff report was presented, and public comments were provided. The Highway District also accepted exhibits. In particular, the Trust sought to establish that a road had existed and been used by the public for a very long period. The Trust primarily relied on maps that depicted the right-of-way. The Trust alternatively argued that the "abandonment" which purportedly occurred in 1910 was only abandonment of work on the road, rather than a legal abandonment of the right-of-way, so even if a physical road had not been built following the surveyed right-of-way, the Road still existed in a legal sense. The Warners and individuals providing public comment in support of their position argued that nothing following the surveyed Road had ever been built,[2] and that the right-of-way had been abandoned by operation of law.[3]

After discussing the issue, Commissioner John Austin moved to decline to validate the Road "because [the Road] was abandoned by Kootenai County Board of Commissioners as a public right-of-way on July 13, 1910 and therefore no legal basis exists for the road validation." The motion was seconded and the Highway District voted to decline validation of the Road as a public right-of-way.

On February 12, 2018, a representative of the Trust orally requested that the Highway District set aside its decision, and submitted additional materials to support the request for a

---

[2] Several affidavits presented by witnesses opposing validation of the Road described a driveway that left an established county road (East Doyle Road) and traveled to buildings located on what is now the Warners' property. In the 1980s, this driveway was rerouted, leaving the old driveway path to return to its natural state; however, several witnesses stated that both driveway paths never left the Warners' property or entered what is now the Trust's property. In addition, after the path of the Road was surveyed in 2017, one witness testified that the survey stakes did not follow the driveway paths—old or new.

[3] Notably, Section 876 of the Idaho Revised Code, in effect when the purported abandonment occurred, provides that roads not worked or used for a period of five years would cease to be a highway. *See* Idaho Revised Code § 876 (1908).

rehearing.[4] This was followed by written and oral requests for reconsideration and to reopen the public hearing on March 19, 2018. After holding a special meeting to discuss these requests, the Highway District voted to reopen the public hearing.

On May 21, 2018, the Highway District conducted the reopened validation hearing. Additional public testimony and exhibits were presented, with the Trust arguing that the legal descriptions in the 1913 deeds—referencing "the County road"—suggested that the right-of-way had not been abandoned in 1910. The Trust also argued that when Government Lot 8 was sold at public auction by the Board in 1934, there had to be legal access to the property; otherwise, it would have been legally landlocked. Finally, the Trust argued that it was in the public interest to recognize the right-of-way. At the close of public comment, the Highway District's commissioners deliberated again. One commissioner stated he did not believe it would be in the public interest to validate the road because it had not been a road since 1910, and that the road could not be built in its purported location because of the adjoining lake's changing water levels, which had resulted following construction of the dam on Rose Lake. Another commissioner agreed, commenting that the 1910 reasoning for abandoning the road, that the cost of construction exceeded the public benefit, remained true. The Highway District commissioners again voted to decline to validate the Road.

On June 25, 2018, the Highway District entered new findings of fact, conclusions of law, and an order on rehearing. Through its decision, the Highway District declined to validate the right-of-way. The Highway District concluded that, if a road had been constructed, it could not be determined if it followed the same survey points as the right-of-way adopted in the viewers' report. The Highway District also concluded that it was not in the public interest to validate the road, and that there was no legal basis to validate the road after its abandonment.

### C. Judicial Review by the District Court.

On July 16, 2018, the Trust petitioned the district court for judicial review of the Highway District's decision. The Trust raised fifteen issues in its petition to the district court. Several of these involved the Highway District's decision to undertake validation proceedings, rather than abandonment proceedings. Other issues focused on the Highway District's determination that

---

[4] These materials consisted of several deeds executed and recorded in 1913 that described the property being conveyed by referring to land lying west of "the County road." The Trust argued this "County road" appeared to follow the path of the Road purportedly abandoned in 1910.

validating the Road was not in the public interest. The Trust also argued that subsequent deeds referring to "the County road" showed that the 1910 abandonment had been invalid or had never occurred, and that the tax sale of Government Lot 8 in 1934 would estop the Highway District from invalidating the Road because the sale of the lot would never have occurred unless there had been guaranteed access to the property and declining to validate now would effectively land-lock the lot. The Warners, the Teichmanns, and the Highway District opposed this petition. Following oral arguments, the district court entered its memorandum decision and order affirming the Highway District's decision.

The Trust timely appealed.[5]

## II. STANDARD OF REVIEW

"[T]his Court reviews [a] highway district's action independent of the district court's decision." *Galvin v. Canyon Highway Dist. No. 4*, 134 Idaho 576, 578, 6 P.3d 826, 828 (2000) (citing *Ferguson v. Bd. of Cty. Comm'rs for Ada Cty.*, 110 Idaho 785, 788, 718 P.2d 1223, 1226 (1986)). However, "we are 'procedurally bound to affirm or reverse the decisions of the district court.' " *Flying "A" Ranch, Inc. v. Cty. Comm'rs of Fremont Cty.*, 157 Idaho 937, 939–40, 342 P.3d 649, 651–52 (2015) (alteration in original) (quoting *Pelayo v. Pelayo*, 154 Idaho 855, 859, 303 P.3d 214, 218 (2013)). Further, this Court defers to the factual findings made below by either the highway district or district court unless they are unsupported by substantial and competent evidence. *Id.* at 940, 342 P.3d at 652.

*Richel Family Tr. v. Worley Highway Dist.*, 167 Idaho 189, 195, 468 P.3d 775, 781 (2020).

To determine whether the trial court abused its discretion, this Court analyzes "[w]hether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the outer boundaries of its discretion; (3) acted consistently with the legal standards applicable to the specific choices available to it; and (4) reached its decision by the exercise of reason."

*E. Side Highway Dist. v. Delavan*, 167 Idaho 325, 335, 470 P.3d 1134, 1144 (2019) (quoting

*Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018) (citation omitted)).

"[I]f a district court fails to enumerate its reasons for a discretionary decision, and the reasons are not obvious from the record, the Court will remand the case." *DAFCO LLC v. Stewart Title Guar. Co.*, 156 Idaho 749, 756, 331 P.3d 491, 498 (2014) (citing *Quick v. Crane*, 111 Idaho 759, 772–73, 727 P.2d 1187, 1200–01 (1986)).

---

[5] On appeal, the Highway District submitted the lion's share of briefing on behalf of the various respondents. The Warners joined in the Highway District's brief with minor additional argument. The Teichmanns joined the Highway District's brief with no additional written argument.

III.    ANALYSIS

**A. The Highway District did not err in initiating validation proceedings instead of conducting abandonment and validation proceedings at the same time.**

The Highway District meeting notes from October 24, 2016, reflect that Rande Warner spoke to the Commissioners about the Road and "requested [that they] consider abandoning it." The Highway District later initiated road validation proceedings through Resolution 2017-05 on November 20, 2017, in response to the Trust's request to utilize a portion of the purported right-of-way. In reaction to the Highway District's initiation of validation proceedings, the Warners filed a formal petition for abandonment of the Road, twice requesting that abandonment proceedings be conducted during those proceedings. (The Warners had never begun formal abandonment proceedings prior to the Highway District's initiation of validation proceedings.) The Highway District declined the Warners' requests and elected to proceed with the validation proceeding as scheduled.

The Trust argued to the district court that the Highway District should have addressed the Warners' multiple informal requests for an abandonment hearing before taking up the question of validation. The Trust also argued that the Highway District did not have good cause to instead initiate validation proceedings under Idaho Code subsections 40-203A(1)(a)–(c). The district court rejected the Trust's argument: first reasoning that the Trust did not have standing to challenge the Highway District's denial of the *Warners'* requests for abandonment proceedings; next by determining that the Highway District also had cause to initiate validation proceedings because there was a dispute about the Road's legal status and existence; and finally because doubt existed as to the legal establishment of the Road due to omission or defect.

On appeal, the Trust has asserted that the Highway District (1) lacked the legal ability under Idaho Code section 40-203A(1) to initiate validation proceedings; and (2) erred when it declined the Warners' requests to continue the validation proceedings which would have resulted in abandonment proceedings being conducted at the same time as the validation proceedings.

1. The Highway District had cause to initiate validation proceedings under Idaho Code section 40-203A(1).

Idaho Code section 40-203A(1) allows highway district commissioners to initiate validation proceedings on their own resolution, if any of the following conditions exist:

> (a) If, through omission or defect, doubt exists as to the legal establishment or evidence of establishment of a highway or public right-of-way;

(b) If the location of the highway or public right-of-way cannot be accurately determined due to numerous alterations of the highway or public right-of-way, a defective survey of the highway, public right-of-way or adjacent property, or loss or destruction of the original survey of the highways or public rights-of-way; or

(c) If the highway or public right-of-way as traveled and used does not generally conform to the location of a highway or public right-of-way described on the official highway system map or in the public records.

I.C. § 40-203A(1). Highway district commissioners are also permitted to abandon and vacate a right-of-way under Idaho Code section 40-203, by initiating proceedings either by resolution or upon a petition. *See* I.C. § 40-203(1).

In arguing that the Highway District did not have cause to initiate validation proceedings, the Trust asserts that the Highway District did not identify an "omission or defect in the establishment of [the Road]" in its findings of fact, and that the district court incorrectly relied on the lack of easements granting Kootenai County the right-of-way in 1908.

There was sufficient doubt about both the physical establishment and legal continuation of the Road for the Highway District to initiate validation proceedings. First, it is clear from the record that the parties vigorously disputed whether the Road had ever been constructed. Second, the Highway District identified confusion about the continued existence of the Road, given the purported abandonment in 1910 and lack of evidence regarding construction or maintenance of the Road. In October 2016, the Highway District minutes reveal that, despite recording the viewers' report in September 2016, the events giving rise to a claim that the right-of-way existed were much more complicated than originally thought. The confusion about whether the Road had ever actually been built was repeated in the Highway District's minutes in July 2017. There was sufficient doubt about the physical establishment and legal continuation of the Road due to omission or defect.

The Trust has argued that the district court erroneously applied the presumption of regularity as to the 1910 "abandonment" of the Road as a reason the Highway District had cause to initiate validation proceedings. The Trust apparently argues that this presumption should not be applied in this case. However, this case presents precisely the factual scenario where a presumption of regularity is appropriate, given the significant passage of time and the lack of evidence either way. *See Roberts v. Bd. of Trs., Pocatello, Sch. Dist. No. 25*, 134 Idaho 890, 894, 11 P.3d 1108, 1112 (2000) (citation omitted); *Macrae v. Smith*, 126 Idaho 788, 790, 890 P.2d 739, 741 (1995). Accordingly, the Highway District had legal cause to initiate validation proceedings particularly in light of the presumption of regularity in the Road's century old abandonment.

8

2. The Highway District did not err when it declined to conduct abandonment proceedings at the same time it conducted validation proceedings.

The district court held that the Trust lacked standing to challenge the Highway District's decision not to continue validation proceedings because the Trust could not show injury. It is unnecessary to address the district court's approach to "standing" because even assuming the Trust has standing to challenge this decision, the Highway District was well within its discretion to decline to continue the validation proceedings. Idaho Code section 40-208(7) recognizes the discretion of a highway district to "initiate validation or abandonment proceedings, or both, as provided for in [Idaho Code sections] 40-203 and 40-203A[.]" I.C. § 40-208(7).[6] Because the Highway District was vested with the discretion to conduct a validation proceeding, an abandonment proceeding, or both, the Trust's "standing" is immaterial to a resolution of this issue. Even assuming for purposes of argument that the Trust had standing, the Highway District had the discretion to proceed in the way that it did. Consequently, the Highway District did not err in declining to continue the validation proceedings.

**B. The Highway District's finding that it was not in the public interest to validate the road was a proper exercise of its discretion.**

Although the Highway District's initial findings of fact and conclusions of law, entered March 26, 2018, did not specifically refer to the public interest, it concluded in its final order on rehearing that validating the Road would not be in the public interest.

On appeal to the district court, the Trust argued that the Highway District's decision regarding the public interest should have contained specific facts and analysis supporting its determination about the public interest. The Warners, as well as the Highway District, relied on *Sopatyk v. Lemhi County*, 151 Idaho 809, 264 P.3d 916 (2011), to argue that the Highway District was not required to elucidate further once it determined that validating the Road would not be in the public interest. The district court found *Sopatyk* convincing, relying on the case to determine that the Highway District's decision that validation was not in the public interest was not clearly erroneous.

The Trust now argues that the 2013 amendments to Idaho Code subsections 40-203A(6) and (7) superseded and replaced *Sopatyk*. In particular, the Trust contends that post-*Sopatyk*

_____

[6] The Trust has emphasized that the Warners' request in October 2016 was "first in line." However, the Warners did not file a formal petition for abandonment until *after* the validation proceedings had been initiated. *See also* I.C. § 40-203(1)(b) (which sets forth the procedure for filing a formal petition and the fee associated with abandonment petitions).

9

statutory amendments show the legislative intent that a board's determination regarding the "public interest" is a discretionary decision, i.e., that the reasoning should be sufficient to review for an abuse of discretion under this Court's jurisprudence.[7]

The Highway District argues that, while specific *facts* supporting an agency decision are required, an explanation of the agency's decision-making process is not. In particular, the Highway District points to Idaho Code section 40-203A(3), noting that the plain language of the statute only requires that a public interest determination be made, but does not require findings of fact specifically addressing this determination. In response, the Trust characterizes the Highway District's finding regarding the public interest as a "flat assertion," and that there is no information in the agency record about how this finding was reached.

As a preliminary matter, it is clear that statutory amendments passed in 2013 made clear that the public-interest finding is a discretionary determination rather than a factual finding. *Compare* I.C. § 40-208(7) (1993) (providing deference to factual findings that are not "clearly erroneous in view of the reliable, probative and substantial information on the whole record"); *Sopatyk*, 151 Idaho at 816, 264 P.3d at 923 (interpreting the public-interest finding as a factual finding reviewed under Idaho Code 40-208(7) for clear error), *with* I.C. § 40-208(6) (italics added) ("The court shall consider the record before the board of county or highway district commissioners and shall defer to the board of county or highway district commissioners *on matters in which such board has appropriately exercised its discretion with respect to the evaluation of the public interest*.").

The Highway District's finding that it was not in the public interest to validate the Road was both an appropriate exercise of discretion and supported by substantial and competent evidence. First, on appeal, this Court reviews the Highway District's decision independently of the district court's decision. *Galvin*, 134 Idaho at 578, 6 P.3d at 828 (citation omitted). Even given that *Sopatyk* has been modified by the 2013 amendment to the judicial review statute for highway

---

[7] In 2013, House Bill 321 amended several statutes relating to highways and bridges. *See* 2013 Idaho Laws 559–66 (H.B. 321). These amendments changed the nature of judicial review of highway commissioners' decisions, and allowed the district court to conduct a *de novo* review of issues regarding the creation, width, and abandonment of highways. *See* I.C. § 40-208(6). The district court was no longer limited to the record, and instead could accept new evidence. *Id.* However, the district court was also required to "defer to the board of county or highway district commissioners on matters in which such board has appropriately exercised its discretion with respect to the evaluation of the public interest." *Id.* The statute requiring the commissioners to make a public-interest finding was not altered. *See* I.C. § 40-203A(3). As amended, Idaho Code section 40-208(7) established validation and abandonment proceedings as the proper means of resolving disputes about the status or width of highways (as opposed to resolving these disputes through quiet title actions).

district decisions, the district court's reliance on *Sopatyk* to affirm the Highway District's public-interest finding does not render its decision fatally flawed as long as the public-interest finding does not constitute an abuse of discretion by the Highway District. Second, the Highway District's reasoning is obvious from the record, which supports the determination that its decision was made by an exercise of reason. *See In re Prefiling Order Declaring Vexatious Litigant*, 164 Idaho 771, 777, 435 P.3d 1091, 1097 (2019) (citing *Palmer v. Spain*, 138 Idaho 798, 801–02, 69 P.3d 1059, 1062–63 (2003). The Highway District's deliberations were contained in the transcript and are part of the administrative record. Although it is not a lengthy discussion, the commissioners' reasoning may be gleaned from the transcript. Finally, the commissioners did not abuse their discretion. The commissioners addressed the facts and arguments presented to them. The Highway District was persuaded that the Road itself had never been physically built, and further agreed with the 1910 Board that from a cost-benefit perspective, the cost clearly outweighed the public benefit that would be attained from building the Road. Accordingly, the district court's decision in this regard is affirmed. The Highway District did not abuse its discretion in concluding the public interest would not be served by validating the Road.

## C. Quasi-estoppel does not prevent the Highway District from declining to validate the Road.

In 1934, Government Lot 8 came into the possession of the Board, which later sold it at a tax sale auction. According to the Trust, at the time of the tax sale, Government Lot 8 was only accessible via the Road. The Trust argued to the district court that the doctrine of quasi-estoppel should be applied to prevent the Highway District from changing its position on whether the Road was abandoned, contending that the Highway District "gain[ed] benefits . . . in the form of fiscal savings in not having to cut through and maintain the road . . . ." The district court rejected this argument, stating that the Trust had failed "to identify or explain how the [Highway] District asserted any position inconsistent with a position previously taken by the [Highway] District. Moreover, [the Trust has] not established that it would be unconscionable to allow the [Highway] District to maintain its position."

On appeal, the Trust reiterates its argument, and relies on a dissent in *Schiewe v. Farwell*, 125 Idaho 46, 49, 867 P.2d 920, 923 (1993), to argue that it would be unconscionable for "Kootenai County through [the Highway District] to maintain its now inconsistent position that [the Road] does not exist."

The Highway District disputes that the Board, which sold Government Lot 8 in 1934, is the same "party" as the Highway District. The Highway District also asserts that there is no evidence that the tax sale in 1934 was predicated on guaranteed access via the Road.

> The doctrine of quasi-estoppel applies when: (1) the offending party took a different position than his or her original position and (2) either (a) the offending party gained an advantage or caused a disadvantage to the other party; (b) the other party was induced to change positions; or (c) it would be unconscionable to permit the offending party to maintain an inconsistent position from one he or she has already derived a benefit or acquiesced in. *Atwood v. Smith*, 143 Idaho 110, 114, 138 P.3d 310, 314 (2006) (citation omitted). "To prove quasi-estoppel, it is not necessary to show detrimental reliance; instead, there must be evidence that it would be unconscionable to permit the offending party to assert allegedly contrary positions." *Id.*

*Budget Truck Sales, LLC v. Tilley*, 163 Idaho 841, 849, 419 P.3d 1139, 1147 (2018). The Trust appears to rely on the sub-elements (a) and (c) of quasi-estoppel.

The Trust's claim of quasi-estoppel is unpersuasive. At the outset, it is unclear what "original position" the Board took in 1934, the change from which the Trust now finds objectionable. There is no indication from the record that the Board took a position that the Road provided legal access to Government Lot 8 when it sold the lot. The Trust has conceded that the legal description of the deed conveying Government Lot 8 to the private buyer does not address whether the property was landlocked. The Trust reasons that the buyer would not have purchased, and the Board would not have sold, landlocked property. However, the Trust has provided no evidence to support its contention that the Board's position was that Government Lot 8 was accessible via the Road, relying instead on "reasonable presumption[s]" about access to Government Lot 8 at the time of the tax sale. Next, the "benefit" that the Trust argues the Highway District has received, "not having to cut through and maintain [the Road]," only appears to be a "benefit" if the Highway District would otherwise be required to build a road and maintain it. Finally, even if the Highway District has "benefitted" from its decision, the Trust has not established that this would somehow be unconscionable. The Trust relies on a dissent from *Schiewe v. Farwell*, 125 Idaho at 52–53, 867 P.2d at 926–27, as support for its argument that such a result would be unconscionable; however, the dissent relied on is not binding precedent, much less persuasive. The majority in *Schiewe* never addressed quasi-estoppel because it concluded the issue had never been raised before the trial court. *See Schiewe*, 125 Idaho at 49, 867 P.2d at 923. The Trust has not argued or presented evidence of how this "inconsistency" in position has harmed

12

it or affected its ability to enjoy the property. The case law relied on by the Trust is inapposite. As a result, the district court appropriately rejected the Trust's claim of quasi-estoppel.[8]

### D. The Respondents are entitled to costs, but not attorney fees.

Both the Trust and the Highway District have requested attorney fees under Idaho Code section 12-117. The Trust argues that it is entitled to attorney fees under Idaho Code section 12-117(6)(e), because the Highway District "acted without a reasonable basis in fact or law." However, because the Trust did not prevail, it is not entitled to attorney fees. The Highway District, the prevailing party, similarly argues that it is entitled to attorney fees on appeal under Idaho Code sections 12-117(1) or 12-117(2).

"It is well established that attorney fees and costs cannot be awarded unless they are authorized by statute or by contract." *Med. Recovery Servs., LLC v. Lopez*, 163 Idaho 281, 283, 411 P.3d 1182, 1184 (2018) (quotation omitted). Idaho Code subsections 12-117(1) and (2) permit an award of attorney fees to the prevailing—or partially prevailing—party when "the nonprevailing party acted without a reasonable basis in fact or law." I.C. §§ 12-117(1)–(2).

The Highway District has prevailed on appeal. However, the Trust's appeal raised issues of first impression regarding judicial review of the Highway District's actions, and the Trust has not pursued its appeal without a reasonable basis in fact or law. Accordingly, we decline to grant the Highway District's request for attorney fees.

"With the exception of post-conviction appeals and appeals from proceedings involving the termination of parental rights or an adoption, costs shall be allowed as a matter of course to the prevailing party unless otherwise provided by law or order of the Court." I.A.R. 40(a). Because the Highway District, the Warners, and the Teichmanns have prevailed on appeal, they are entitled to costs under I.A.R. 40(a).

---

[8] The Trust further contends that there is "double jeopardy" (alternately arguing "double estoppel") because of a subsequent trespass case the Warners filed against the members of the Palmer family in 2019. This argument is also unpersuasive. "Double jeopardy" is a principle that applies in criminal law; this is a civil case, and the Trust has made no attempt to explain why this principle applies under these circumstances. In addition, the Trust seems to argue that the separate civil trespass proceedings initiated by the *Warners* are somehow related to the Trust's quasi-estoppel claims against the Highway District; however, quasi-estoppel requires that the action complained of be taken by the same person, or a predecessor-in-interest. *See, e.g.*, *Infanger v. City of Salmon*, 137 Idaho 45, 50, 44 P.3d 1100, 1105 (2002). There is no connection between the Highway District and the Warners, other than it appears their interests are aligned in that they are both adverse to the Trust.

## IV.    CONCLUSION

The district court's decision is affirmed. The Highway District did not err in initiating validation proceedings in the way that it did, in declining to validate the Road, or in finding validation of the Road was not in the public interest. The Highway District's request for attorney fees is denied. Costs are awarded to the Highway District, the Warners, and the Teichmanns.

Chief Justice BURDICK, Justices BRODY, BEVAN and MOELLER CONCUR.